## Woolf v. Bardinet Exports, Inc., et al.

*Philip J. Franzese*, for claimant.
*Frank R. Ambler*, for defendants.
*Ralph H. Behney*, for Commonwealth.

ALESSANDRONI, J., April 11, 1951.—This is an appeal by defendant and its insurance carrier from a decision of the Workmen's Compensation Board awarding compensation to claimant, Leota E. Woolf.

The referee found that claimant became totally disabled on April 23, 1947, as a result of dermatitis contracted in her employment and that this condition continued until June 24, 1949. This finding was affirmed by the board.

The record establishes that claimant was employed for a period in excess of four years operating a labeling machine which required the continuous handling, touching and immersion of her fingers in glue. After approximately two and one half years she had trouble with her hands and reported the condition to her superiors on a number of occasions. Finally she was sent to a physician early in 1947 but was forced to cease work on April 23, 1947, by reason of this condition.

The medical evidence supporting the award includes the testimony of Dr. Paul R. Kline, a skin specialist, who treated claimant over an extended period of time. He diagnosed her condition as dermatitis venanata, which he defined as an inflammatory condition of the skin caused by chemical or other irritants—"in this case glue". He stated that the condition spread as he treated claimant, and unequivocally testified that there was a causal connection between the work she performed and the skin disease she had contracted. He said that this was "a dermatitis caused by the constant maceration of the skin followed by the irritation of the glue", with which her hands came in continuous contact in her work.

Dr. John F. Wilson, an impartial expert appointed by the compensation authorities, when asked if there was any connection between her work and her disability, stated "I feel it is directly related to her work". He diagnosed her condition as chronic paronychiae caused by continuous exposure to the wetness of the glue. Although Doctor Wilson conceded that "sufficient" exposure to dish water might produce this con-

dition, he dismissed this as a cause, since claimant had done housework previously without difficulty.

The evidence also discloses that claimant and one other employe were the only persons in defendant's plant who worked with this glue and both of them contracted this skin disease. The necessary proof of causal connection between the disability and employment was established: Fitzgerald v. Atlas Asbestos Co., 158 Pa. Superior Ct. 151.

Section 301(c) of The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, provides that compensation "shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employee was engaged, and not common to the general population . . .".

In enumerating "occupational diseases" section 108(i) of the act provides that it shall include, inter alia, "infection or inflammation of the skin due to oils, cutting compounds, lubricants, dust, liquids . . . in any occupation involving direct contact with, handling thereof, or exposure thereto".

We are of the opinion that claimant has sustained the burden of proof, and has established that she suffered from an occupational disease within the meaning of the act. We cannot agree with defendant's contention that this is a disease common to the general population, merely because their medical expert stated that he treated housewives for the same condition resulting from too much immersion of the hands in dish water, and the impartial expert arriving at the same diagnosis stated that sufficient exposure to dish water might produce this condition. It is clear in this case that claimant's condition did not arise from any source other than her work, and though other people may contract comparable skin diseases from other nonoccupational sources, section 108(i) would be reduced almost to the meaningless if defendant's theory were adopted.

The particular skin disease of this claimant arose from the nature of the work she performed and from no other source. We cannot say that dermatitis venanata, the diagnosis reached by the skin specialist who had the most extensive opportunity of observing the condition, is a disease which is common to the general population, and none of the other medical witnesses inferred that it was.

Nor can we accept the theory that the disease is not compensable if found in any other industry or occupation. Defendant's expert said he found the disease as he diagnosed it, in bakers who knead dough, and in bartenders and manicurists. Of course his diagnosis and the cause he assigned differ substantially from the diagnosis and cause assigned by claimant's skin specialist who treated and cured her. In our opinion, however, compensation is not precluded merely because more than one occupation or industry has a prevalence of the same skin disease.

Under the plain terms of section 108(i), whether this be an "infection or inflammation" it is "due to . . . liquids" in an occupation "involving direct contact with . . . or exposure thereto". The act must be liberally construed to effectuate its remedial and humanitarian purposes according to its plain meaning: Simon v. Fine, 167 Pa. Superior Ct. 386. As the board's findings of fact were consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence, the order must be affirmed: Walsh v. Penn Anthracite Mining Company, 147 Pa. Superior Ct. 328, 333; Jaloneck v. Jarecki Manufacturing Co. et al., 157 Pa. Superior Ct. 609, 615.

*Order*

And now, to wit, April 11, 1951, the exceptions and appeal of defendant, Bardinet Exports, Inc., and its

insurance carrier, Zurich General Accident and Liability Insurance Co., Ltd., are dismissed and compensation is awarded to, and judgment entered in favor of, claimant, Leota E. Woolf, for the total sum of $2,212.69, with interest thereon from October 12, 1949, it being the sum due for 112 2/7 weeks' disability at the rate of $18.67 per week, from April 20, 1947, to June 24, 1949, or $2,096.37, and interest thereon, from July 21, 1947, to June 24, 1949, in the sum of $110.03, plus interest on the sum of $2,096.37, from June 24, 1949, to October 12, 1949, in the sum of $6.29; and defendant, Bardinet Exports, Inc., and its insurance carrier, Zurich General Accident and Liability Insurance Co., Ltd., are also ordered and directed to pay Dr. John H. Wilson the sum of $150 for medical services rendered.