ULPIANO VÉLEZ, ETC., Petitioner, v. INDUSTRIAL COMMISSION OF PUERTO RICO and LUIS PILLOT GUAL, beneficiary of the deceased laborer JORGE ANÉS PILLOT, Respondents.

No. 496. Argued January 3, 1956.—Decided April 30, 1956.

*Donald R. Dexter* and *Aida Casañas O'Connor* for petitioner. *Ubaldo Aponte* for the beneficiary.

Mr. JUSTICE SALDAÑA delivered the opinion of the Court.

This case concerns a laborer who died as a result of Weil's disease or infectious jaundice. This disease is not included among those which § 3 of the Workmen's Accident Compensation Act classifies as "occupational diseases," which are compensable. 11 L.P.R.A. § 3. Therefore, the only question raised is whether the laborer lost his life "by reason of *accident* (caused) by any act or function inherent in his work or employment and that it happened in the course of such work and as a consequence thereof . . . ." 11 L.P.R.A. § 2.

During several months before his death, laborer Jorge Anés Pillot worked continuously in the Bureau for the Control of Malaria of the Department of Health. His work consisted of cleaning the irrigation canals of the sugar-cane plantations on the south coast of Puerto Rico and spraying them with DDT. In the afternoon of December 23, 1948, the laborer stopped working and lay down under a tree. His fellow workers noticed that he was running a high temperature and took him immediately to the hospital in Guayama. His ailment was diagnosed as Weil's disease and, despite the medical treatment given, he died as a result thereof on January 8, 1949.

The Manager of the State Insurance Fund rejected the claim made by the only beneficiary, the father of Jorge Anés Pillot, holding that the death was not due to any labor accident. Claimant appealed from this decision and, after the corresponding public hearing was held, the Industrial Commission on August 10, 1954, set aside the Manager's decision. The latter moved for reconsideration, and under date of December 7, 1954, the same was denied with the dissenting vote of Commissioner Enrique Campos del Toro.

The expert evidence showed that Weil's disease is of an infectious character and is generally contracted by drinking water or eating food infested with a parasite (leptospira ictero-hæmorragiæ), which is the causal agent of the disease. It may also be contracted through an abrasion or scratch in some part of the body which comes in contact with some infested matter.[1] Generally, the contamination of water or of food is produced by rats infested with a genus of spirochetes which cause infectious jaundice and which they expel in the urine. The waters of the canals used in sugar-cane irrigation, particularly those which are stagnant

---

[1] It is believed that the channel of entry of the parasites which cause Weil's disease and other similar infections is the respiratory or the gastrointestinal system, "although conceivably they may enter through scratches or abrasions of the skin." Cecil and Loeb (Editors), *Textbook of Medicine*, 9th ed., 1955, p. 126 *et seq.*

and covered with slime, are often contaminated or infested with those parasites because it is precisely in the sugar-cane plantations where rats abound, and they are the chief carriers of infectious jaundice. However, dogs, pigs, and cattle may also carry this infection and transmit Weil's disease which has an incubation period from 8 to 12 days and is fatal in approximately five per cent of the cases. Cecil and Loeb, *op. cit. supra,* 9th ed., pp. 126 *et seq.,* 384 *et seq.*

Considering the period of incubation, it is impossible to determine, on the basis of the evidence presented, the exact time and the exact manner in which the deceased laborer contracted the infectious jaundice which caused his death. The parties stipulated "that Jorge Anés Pillot did not suffer any wound or fall or any labor accident." Moreover, there was evidence that the laborer was a healthy person and that he did not suffer from any disease previous to the occurrence. The expert evidence, which consisted of Dr. Rivera Bruno's testimony, was to the effect that the laborer could have contracted the disease in the course of his work (drinking polluted water or through a scratch or cut on his hands), and that he could have also contracted it outside of work. However, the Industrial Commission held that "although there is no direct evidence that the infection was contracted the same day and in the same place where the laborer was working, the balance of probabilities is that the laborer contracted the infection in the course and as a result of his work, in view of the peculiar hazard of the place and manner of work . . ." On this sole basis, the Industrial Commission further concluded that the infection in the case at bar was a labor *accident.*

We believe the Commission committed error. To classify the contraction of an infectious disease as an *accident,* it is not sufficient that it occur in the course and as a result of work, otherwise we would be adding to the list of occupational diseases not only infectious jaundice but also all diseases caused by germs or parasites which conceivably may

be contracted in the work, from smallpox, syphilis, and meningitis to a common cold. And, as already noted, the Workmen's Accident Compensation Act does not provide life and health insurance, nor does the Manager of the State Insurance Fund collect premiums from the employers to cover those risks.

It is well to note above all that a supposition or conjecture is not sufficient to establish the causal connection between the infectious disease and the employment. The essential fact that the disease actually arose in the course and as a result of employment must be proved by claimant by competent and trustworthy evidence. Obviously, it is no easy matter to establish this connection in the case of infectious diseases. See 1 Larson, *Workmen's Compensation Law*, § 40.60. But this cannot alter the burden of proof nor eliminate the necessity for establishing such causal connection as a condition precedent to all compensation. In the case at bar, there was no positive expert evidence that the infection was contracted. in the course and as a consequence of employment. In order to reach the conclusion as to the causal connection, the Commission relies on a "balance of probabilities" and admits that there was no "direct evidence that the infection was contracted the same day and in the same place where the laborer was working." The latter statement shows that the period of incubation of the disease was not taken into account. Moreover, the rats which live in the sugar-cane plantations could infest not only the water of the canals but also the food which the laborer ate and the water which he drank outside the work. However, for the purposes of this case we will not interfere with the weighing of the expert evidence made by the Commission on the essential fact of the causal connection. See 11 L.P.R.A. § 12; *Acting Mgr. State Ins. Fund* v. *Industrial Comm'n*, 73 P.R.R. 175 (1952). Cf. *Ortega* v. *Industrial Commission*, 73 P.R.R. 184, 187 (1952), and *Montaner* v. *Industrial Comm'n*, 54 P.R.R. 686, 688 (1939). Even assuming that the laborer contracted

infectious jaundice in the course and as a result of his employment, the additional conclusion reached by the Commission in this case, namely, that it is a labor "accident," is not warranted.

Even if there be no scientific distinction between "accident" and "disease," our statute makes it our duty to make one for the practical purpose of determining which cases are entitled to compensation. Generally, for an "accident" to exist (1) the injury or death must have been due to an unexpected, sudden, and fortuitous event, and (2) the injury or death must be traceable within reasonable limits to a definite time, place, and occasion. *Salazar* v. *Industrial Commission; Mgr. State Fund, Int.*, 76 P.R.R. 102, 107 (1954). These two requirements are truly deduced from the ordinary meaning of the term "accident" in our language. Only common sense can determine how they should be applied in numberless concrete situations which may actually arise. *Mgr. of State Insurance Fund* v. *Indus. Comm'n,* 74 P.R.R. 886, 895 (1953).

In the case of infectious diseases, we believe there is no "accident" if the germs or parasites enter the human body through the respiratory or gastrointestinal system, or through any other normal and natural channel, and the infection is not assignable to a trauma or lesion of the tissues by mechanical agents which by themselves constitute something unexpected, sudden, and fortuitous, and which will permit the fixing within reasonable limits of the time, place, and occasion of the inception of the disease. See *Simon* v. *Fine,* 74 A. 2d 674 (Pa. 1950); *Hoffman* v. *Consumers Water Co.,* 99 P. 2d 919 (Idaho 1940); *Loudon* v. *H. W. Shaull & Sons,* 13 A. 2d 129 (Pa. 1940); *Basil* v. *Butterworth Hospital,* 262 N. W. 281 (Mich. 1935); *Industrial Commission* v. *Cross,* 136 N. E. 283 (Ohio 1922). We reject as incorrect the rule prevailing in some of the states to the effect that there exists an "accidental" infectious disease by the mere fact that the germs or parasites entered the human

body through some scratch or lesion on the skin, however slight. See 1 Larson, *supra*, § § 40.20, 40.30, and cases cited therein. *Cf. Connelly* v. *Hunt Furniture Co.*, 147 N. E. 366 (N. Y. 1925) ; *Smith's Case*, 30 N. E. 2d 536 (Mass. 1940) ; Annotations in 11 A.L.R. 790, 20 A.L.R. 4, 39 A.L.R. 871, and 57 A.L.R. 631. In our opinion, the determination of whether an infectious disease is a compensable "accident" cannot be made to depend on such an insignificant factor. Moreover, we believe that the "unusual exposure" theory is not applicable to infectious diseases, according to which the additional hazard to which a laborer is subject by reason of some special work, and to which other persons not engaged in the same activity are not subject, is somehow "accidental" and makes the disease compensable. *Cf. Industrial Comm'n* v. *Corwin Hospital*, 250 P. 2d 135 (Colo. 1952) ; 1 Larson, *supra*, § 40.50, and cases cited therein.

There is nothing in the evidence presented to the Commission in the case at bar to show that the deceased laborer contracted Weil's disease by reason of a trauma which in itself was something unexpected, sudden, and fortuitous. Nor are we able to determine in any manner whatever the time, place, and occasion when the disease set in. Otherwise stated, the infectious jaundice in this case was not contracted as a result of an unexpected, sudden, and fortuitous mishap which caused violence in the deceased laborer's body. The mere possibility or conjecture that the laborer could have contracted Weil's disease through some small cut on his hands or by drinking polluted water at work, is not sufficient to classify the mishap as an "accident." Infectious jaundice is in fact a typical occupational disease of persons engaged in the cleaning of canals and sewers and also of sugar-cane cutters in flooded areas. Zinsser's *Textbook of Bacteriology* (10th ed.) (1952), p. 615; Bergmann and others, *Tratado de Medicina Interna* (1947), p. 1082 *et seq.* It is incumbent on the legislative power, if it deems it advisable, to amend the law so as to include infectious jaundice among com-

pensable occupational diseases. Summing up, we hold that in the case at bar there was no compensable "accident." On the contrary, the infection with the parasites that cause Weil's disease was precisely one of the normal and inherent hazards of the work performed by the deceased laborer; in other words, *an occupational disease*, in the strict meaning of this term, which is not compensable since it was excluded by the lawmaker from the list in § 3. See *Salazar* v. *Industrial Commission, Mgr. State Fund, Int., supra,* pp. 116–17, and 1 Larsen, *supra,* p. 600.

The decision of the Commission will be set aside.

Mr. Justice Belaval concurs in the result.

Mr. Justice Negrón Fernández dissented.