Loudon *v.* H. W. Shaull & Sons et al., Appellants.

Argued March 15, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Thomas Raeburn White,* with him *Edwin M. Blumenthal, Wayland H. Elsbree* and *White & Staples,* for appellants.

*Mark E. Garber,* with him *George M. Houck,* for appellee.

OPINION BY BALDRIGE, J., April 29, 1940:

This appeal is from a judgment entered by the court below affirming an award in a workmen's compensation case.

Simon Loudon, husband of the claimant, had been employed during the late spring and summer of 1936 as a laborer by H. W. Shaull and Sons, contractors, engaged in the reconstructing of a highway near Carlisle. About 150 men were employed on this project. During the month of August an epidemic of typhoid fever broke out among the employes, reaching its peak between August 19 and September 3. Over 30 employes were stricken, several fatally.

Simon Loudon became ill on or about August 21. He consulted a physician who determined that he was

suffering from typhoid fever. The prevailing epidemic caused an investigation to be made by the Pennsylvania Department of Health, which resulted in discovering that all the water in the vicinity where deceased worked was obtained from three sources—Hogestown Spring, Hogestown Run, and taps at Kauffman's Service Station—and was contaminated.

The referee found as follows: "Twelfth: That on or about August 11, 1936 Simon Loudon while at work for the defendant accidentally introduced typhoid fever germs into his body through the mouth by drinking water which he believed was good but which, in fact, was contaminated by typhoid fever bacillus. As a result of drinking this contaminated water while at work Simon Loudon became ill on the Twenty-first day of August, 1936 and this illness progressed and developed without the intervention of any other cause and was diagnosed as typhoid fever on August 28, 1936, resulting in his death on September 14, 1936." This finding was affirmed by the Board.

The appellants state in their paper book that they concede, for the purposes of this case, that the decedent's death was definitely traceable to the drinking of contaminated water while at work, sometime during the month of August, but they assert that there was no evidence showing the exact date of the absorption of the germ or of other facts that constitute an "accident" within the meaning of our Workmen's Compensation Act of June 2, 1915, P. L. 736 (77 PS §411).

The proper scope to be given the term "injury by accident" has been a fertile source of discussion. The decision in the case of *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724, however, has thrown much light on this subject which is ever recurring because of the varying circumstances in each case. There it is stated (p. 577): "The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense. Webster has defined it as 'an event that takes

place without one's foresight or expectation; an un-designed, sudden, and unexpected event; chance; contingency.' ...... Our decisions interpreting the word as used in our compensation law have substantially clung to this meaning."

In common parlance, typhoid fever is considered as a disease, not an accident, unless the illness is attributable to some antecedent occurrence of an unusual and unexpected character which may fairly be termed an accident. It will be observed that an accident is a "sudden and unexpected event." A sudden event implies a distinct happening or occurrence at a particular time: *Mauchline v. State Ins. Fund,* 279 Pa. 524, 526, 124 A. 168. That is borne out by the type of notice required to be given to an employer under Article III, §311 (77 PS §631) of our Workmen's Compensation Act. It is there stated that notice shall be given of the accident and shall specify therein at or about the time and place it occurred. When this alleged accident happened no one could state and no attempt was made to do so. It may have been the 1st of August or two weeks later.

The compensation authorities realized the difficulty of determining the date the typhoid germs entered decedent's body. The board explains that the referee found the 11th of August as the date on the basis that the deceased became ill on August 21, and that there was medical testimony indicating that the average period of incubation of typhoid fever germs is from ten to fourteen days. Accordingly, the referee counted back ten days from the date of the pronounced symptoms and found that August 11 was the approximate date of the accident. We do not know why twelve or fourteen days were not selected. The deceased evidently drank contaminated water not only on the 11th but for days or maybe weeks prior, and most probably subsequent, thereto.

Dr. Keeney, employed to investigate epidemics by the

Pennsylvania Department of Health, said that the incubation of typhoid fever may be from four to twenty-four days. Later, he testified that the average period is from twelve to fourteen days. There was other medical testimony that the average incubating period is two weeks. The time of this alleged accident cannot be definitely fixed under this testimony. The exact moment an accident occurred need not be determined, but the date should be definitely stated with reasonable certainty. To fix a time when the germ entered decedent's body, which is the accident alleged, would be a mere surmise.

In *Micale v. Light and S. W. Ins. Fund,* 105 Pa. Sup. Ct. 399, 161 A. 600, the decedent, a coal miner, died of pneumonia. He had worked for a month in a portion of a mine which was continually wet. In affirming a disallowance of compensation, we pointed out that a death from a germ disease, in order to be compensable, must be shown to be a sudden development from some abrupt violence to the physical structure of the body and not merely the gradual development from a long continued exposure to natural dangers incident to the employment. In *Jeffreyes v. Sager Co.,* 198 App. Div. 446, 233 N. Y. 535, 135 N. E. 907, the claimant's hand had become infected by poisonous chemicals with which she had to come in contact in her work. In the course of the opinion refusing compensation the court said: "More important, however, the injury resulted from no occurrence which is referrable to any particular moment of time which is definite." See, also, *Liondale Bleach Dye and Paint Works v. Riker,* 85 N. J. L. 426, 89 A. 929 and *McCauley v. Imperial Woolen Company et al.,* 261 Pa. 312, 104 A. 617. In the pneumonia cases, except where the pneumonia has been superinduced by an external or traumatic injury, the disease has immediately followed the exposure as in *Heisler v. Lincoln Realty Co.,* 121 Pa. Sup. Ct. 516, 184 A. 305, and *Roth v. Locust*

*Mountain State Hospital et al.,* 130 Pa. Sup. Ct. 1, 196 A. 924.

The appellants have called to our attention *Easton v. Elk Tanning Company,* 129 Pa. Sup. Ct. 535, 195 A. 648, and *Troxell v. Shirk et al.,* 130 Pa. Sup. Ct. 40, 196 A. 899. Some things said therein are pertinent to this case, but we do not regard them, with their dissimilar facts, as controlling here. In the Easton case the infection was alleged to have been caused by the entry of germs through sores on the decedent's hands. The compensation authorities found that there was no competent proof to support the claim, and accordingly we held that there was no accident in the course of employment. In the Troxell case, the claimant sought compensation for disability due to a gonococcic infection, contending that the germs had entered her eye during her employment as a chambermaid by handling soiled towels and bedlinens. The award was refused as there was no proof that the infection occurred in the course of her employment.

In *Parks v. Miller,* 336 Pa. 455, 9 A. 2d 742, a pneumonia case cited by both appellants and appellee, Mr. Justice STERN comprehensively classified the "more characteristic" cases involving the wide range of accidental injuries to act as a guide in future litigation.

The first group comprises cases where there is an involuntary unexpected, fortuitous happening which causes the disease. One of the several cases mentioned thereunder is *Murdock v. New York News Bureau et al.,* 263 Pa. 502, 106 A. 788, where a lineman fell from a pole as a consequence of coming in contact with a wire charged with electricity, and fractured his rib from which, a week later, lobar pneumonia developed. Cases in this group are unquestionably compensable accidents.

In the second group are included cases where the work or act performed by an employe is voluntary and not marked by any unusual feature, but where there occurs an unexpected and unusual pathological result.

112

The accident in such instances is due to the effect rather than the cause. In that field are muscular strains, *Wolford v. Geisel Moving & Storage Co.,* 262 Pa. 454, 105 A. 831, and the sunstroke and heat prostration cases of which *Lane v. Horn and Hardart Baking Co.,* 261 Pa. 329, 104 A. 615 and *Trovato v. McCahan Sugar Refining Co. et al.,* 122 Pa. Sup. Ct. 499, 186 A. 163 are examples. Awards are supported in those cases because a strain or prostration is not the natural, probable and predictable result of an act or exposure to the prevailing conditions.

In the third group the exposure is voluntary and results in pneumonia and similar diseases reasonably foreseeable, but the " 'accident' consists of an unusual and suddenly developing concatenation of circumstances which necessitates impulsive rather than deliberate action and under conditions markedly different from those attendant upon the usual course of the employe's regular work." An illustration of this class is where a janitor was called upon to turn off the steam which was escaping because of the breaking of a pipe, and in doing so he had to first walk across the street in extremely cold weather, then pass through hot steam, which wet his clothes and as a result he developed bronchial pneumonia: *Heisler v. Lincoln Realty Co.,* supra. *Roth v. Locust Mountain State Hospital et al.,* supra, is another case in that category.

The last class is comprised of cases where the exposure causing the pneumonia or similar disease is not only intentional but deliberate, protracted and in the regular course of the employe's work and therefore is no accident. The Parks case falls within that class and compensation was refused.

Our attention has been called to decisions from other states. Some of them have little, if any, application as the provisions in the several statutes there construed are not the same as ours and also because of the varying facts. *Brodin's Case,* 126 A. 829 (Maine); *Was-*

*muth-Endicott Co. v. Karst,* 133 N. E. 609 (Indiana);
*Vennen v. New Dells Lumber Co.,* 154 N. W. 640 (Wisconsin); *Frankamp v. Fordney Hotel,* 193 N. W. 204
(Michigan); *Fidelity & Casualty Co. of N. Y. v. Industrial Accident Commission,* 258 Pac. 698 (California); and *John Rissman & Son v. Industrial Commission,* 154 N. E. 203 (Illinois) are some which are favorable to the appellee's contention.

*McDonald v. Belle Terre Lodge,* 268 N. Y. 663, 198 N. E.
546; *Liondale Bleache Dye and Paint Works v. Riker,*
supra; *Buchanan v. Maryland Casualty Co.,* 116 Tex.
201; *Mills v. Columbia Gas Const. Co.,* 246 Ky. 464;
*State ex rel. Faribault Woolen Mills v. District Ct.,*
138 Minn. 210; *Industrial Comm. v. Cross,* 104 Ohio
561, and other cases unnecessary to cite, tend to support the contention of the appellant.

In *Matter of Connelly v. Hunt Furniture Co.,* 240
N. Y. 83, 147 N. E. 366, a New York case where the
statute is practically the same as ours, the claimant's
son was an embalmer's helper and had absorbed a germ
through a cut on his hand while engaged in his work.
He died as a result of this infection. That was clearly
an accident and compensation was allowed, as it also
was in *Nesbit v. Vandervort & Curry et al.* 128 Pa. Sup.
Ct. 58, 193 A. 393.

Judge CARDOZO, then Associate Judge in the New York
Court of Appeals, in a very interesting opinion, clearly
distinguishes the difference between the introduction
of germs into the body by means of an accident and
through natural channels in the following language:
"We attempt no scientifically exact discrimination between accident and disease or between disease and injury. None perhaps is possible, for the two concepts
are not always exclusive, the one of the other, but often
overlap. The tests to be applied are those of common
understanding as revealed in common speech (citing
cases). We have little doubt that common understanding would envisage this mishap as an accident, and that

common speech would so describe it. Germs may indeed be inhaled through the nose or mouth or absorbed into the system through the normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time. (*Matter of Jeffreyes v. Sager Co.,* 198 App. Div. 446, 233 N. Y. 535). For this as well as for the reason that absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident. Our mental attitude is different when the channel of infection is abnormal or traumatic, a lesion or a cut. If these become dangerous or deadly by contact with infected matter, we think and speak of what has happened as something catastrophic or extraordinary, a mishap or an accident (cf. *Lewis v. Ocean A. & G. Corp.,* supra, at p. 21,) though very likely a disease also. 'A common sense appraisement of everyday forms of speech and modes of thought must tell us when to stop' (*Bird v. St. Paul F. & M. Ins. Co.,* 224 N. Y. 47, 51)."

*Gerst et ux. v. Smith-Faris Co. et al.,* 107 Pa. Sup. Ct. 30, 162 A. 490, monoxide gas; *Sinkiewicz v. Susquehanna Collieries Co.,* 115 Pa. Sup. Ct. 377, 175 A. 757, inhalation of poisonous gases; *Clancy v. Booth & Flinn Co. et al.,* 109 Pa. Sup. Ct. 452, 167 A. 393, sunstroke; *Johnson v. Valvoline Oil Conpany,* 131 Pa. Sup. Ct. 266, 200 A. 224 inhalation of amonia fumes; *Bloom v. Brotherhood Accident Co.,* 85 Pa. Sup. Ct. 398, drinking poison by mistake, and other cases relied upon by the appellee, in our judgment, do not sustain her contention as in each there was evidence of an unexpected and untoward happening at a definite time.

If we accept the appellee's contention, which was adopted by the court below, that the drinking of contaminated water by the deceased constituted an accident, it would seem to logically follow that if an employe at work contracts a cold, influenza, tuberculosis,

pneumonia, or any other disease by normally and naturally breathing in germs the presence of which is traceable to the conditions or surroundings where he worked, the employer is liable. We are of the opinion such a result was not contemplated by the legislature.

It is our duty to try to ascertain the legislative intent. When we do that we have performed our full duty. If the purpose of our statute is to include disease or sickness it would have done so in clear and unmistakable terms and not by the use of language which is at least popularly understood not to include them. It is readily conceivable that if the lower court's interpretation is correct those who are not physically strong, susceptible to disease by reason of low resistence, would not be able to get employment.

We have always given a liberal interpretation to our Workmen's Compensation Statute, but we cannot be bountiful with the money of others by affording relief not given by the law. After giving careful consideration to this interesting case all the members of the court are of the opinion that the award cannot stand.

Judgment is reversed and here entered for defendants.