## Simon *v.* Fine, Appellant.

Argued April 12, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John R. Dierst, Jr.,* with him *O. W. T. Peterson* and *Griggs, Moreland, Blair & Douglass,* for appellant.

*Abraham E. Rosenfield,* with him *Esther Kochin,* for appellee.

OPINION BY DITHRICH, J., July 20, 1950:

Claimant, a kosher meat inspector, contracted Weil's disease while employed in defendant's slaughter house. The disease is a malady which develops from oral ingestion of anything contaminated by a certain type of rat, and particularly by rat excreta. He became ill July 26, 1948, and in his claim petition for compensation for accidental injury he fixed that as the date of the accident. At the hearing he changed the date to July 16, to conform with the medical testimony that there is an incubation period of five to twenty days. He then traced his infection back to an incident that occurred on the earlier date.

He claims that when he went to eat his lunch on July 16 he found that it had been knocked from the bench or shelf where he had placed it to the floor and that the paper in which it was wrapped had been torn. He ate his lunch, however, and it was not until after he became ill and had been advised by his physician as

to the nature of his illness that it occurred to him that his lunch must have been contaminated the day he found it lying on the floor. He did not see the rats knock it onto the floor or tear open the wrapping, nor did he notice any foreign substance on the food. He said the place had been infested with rats during the five years that he had worked there but never before had they "been at" his lunch.

The referee found as a fact that the claimant did not meet with an accident in the course of his employment with defendant on July 16 or July 26, 1948. Claimant also worked for the Pittsburgh Provision & Packing Company, but he said there was an iron cupboard there where "we keep our lunch" and that the rats couldn't get into it.

On appeal from the dismissal of his petition by the referee, the Compensation Board affirmed the findings of fact and conclusions of law of the referee but in its opinion said: "The trouble with the claimant's case is that he has not *in law* proved a compensable accident." (Italics supplied.) That opened the door for the "legal conclusion" by the learned President Judge of the court below that the Board had erred in concluding that "there was . . . no accident within the meaning of the law."

The court below and the claimant on this appeal rely chiefly on *Rittenberg v. Abbott Laboratories,* 158 Pa. Superior Ct. 400, 45 A. 2d 400. Both employ the same wording in referring to it as a "strong parallel" to the case at bar. But in the *Rittenberg* case the employe, who was in the habit of taking bicarbonate of soda, died as a result of taking cyanide salts, similar in appearance to bicarbonate of soda. The real question there was whether the poison was taken intentionally with a view of suicide, or accidentally and by mistake. The proven facts permitted an *inference* by the *compensation* authorities of accidental death. There the employe was

clearly mistaken as to what medicine he was taking; here there was no mistake as to what claimant was eating.

The learned court below assumed that the "compensation authorities believed the testimony of the claimant and his expert physician" since, although making no findings to that effect, the Board in its opinion appeared to treat the question as one of law. The court, however, said: "Since they are sufficiently supported by competent and substantial evidence, clearly appearing in the record, the findings of fact by the Board . . . are conclusive." But as we have pointed out the Board made no findings of its own; it confined itself to affirming the findings of the referee. We regret the necessity of reiterating here what we said in *Garrahan v. Glen Alden Coal Co.*, 135 Pa. Superior Ct. 307, 5 A. 2d 437, at page 312, ". . . if it was the intention of the board to make a finding of fact it should have done so formally instead of by implication"; and at page 316, "The findings of fact by the referee and the board should be sufficiently definite to enable the reviewing court properly to perform the duties imposed upon it which are to determine questions of law, those questions being whether findings of fact by the referee or board are supported by competent evidence and the law has been properly applied."

The court below seemingly recognized the well-established principle that findings of fact by the compensation authorities are conclusive when sufficiently supported by competent and substantial evidence (*Rozauski v. Glen Alden Coal Co.*, 165 Pa. Superior Ct. 460, 69 A. 2d 192), but overlooked the equally well-established principle that the same rule applies to inferences of fact. In drawing its "parallel" of this case with the *Rittenberg* case it said: "[T]here is not only the ingestion of the material later found to be deleterious, . . . poison in the Rittenberg case, the lunch later found to be contaminated in the case at bar, but a factor far better ex-

plained in the case at bar arises in the strong *inference* that rodents, not unusual upon the defendant's premises, intruded upon and occasioned a physical contact with the food or its container, or both, and thus initiated the contamination, an *inference* certainly as strong as the necessary *inference* which completed the chain of developing factors in the Rittenberg case . . ." (Italics supplied.) But the *inference* to be adopted is for the compensation authorities. *Rittenberg v. Abbott Laboratories*, supra; *Hunter v. American Oil Co.*, 136 Pa. Superior Ct. 563, 7 A. 2d 479. "Inference" is defined in Black's Law Dictionary, Third Edition, p. 958, as: ". . . A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." Thayer, in his Preliminary Treatise on Evidence at the Common Law, says on pages 194 and 195, quoted by the Supreme Court in *Neely v. The Provident Life and Accident Ins. Co.*, 322 Pa. 417, 423, 185 A. 784: " 'The right inference or conclusion, in point of fact, is itself matter of fact, and to be ascertained by the jury.' " In a compensation case it is to be ascertained by the compensation authorities.

But assuming the facts to be as alleged by the claimant and granting that they support the inferences deduced by the court, the question remains, do they prove an accident. It is well settled that "to secure compensation there must be proof both of an accident and of an injury; an accident cannot be inferred merely from an injury. There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it": *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 410, 3 A. 2d 377.

In our opinion this case belongs in that class of cases which is not compensable "where the exposure causing the . . . disease is not only intentional but deliberate and protracted, and in the regular course of

the employe's work, and therefore there is no accident either in the happening of an untoward event, or in an unexpected and exceptional result, or in a chain of extraordinary events subjecting the employe to an exigent and unanticipated exposure foreign to his ordinary employment": *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 461, 9 A. 2d 742. After citing a number of cases where "compensation was properly refused," the Court continued, page 463: "In all of these cases the employe voluntarily exposed himself to the prevailing conditions without any unusual circumstances impelling him to do so, and the pneumonia was a foreseeable and not unlikely result." In the instant case the presence of rats was one of the prevailing conditions at defendant's slaughter house and one of the usual and ordinary conditions under which claimant worked for a period of five years; and the contamination of his lunch was a "foreseeable and not unlikely result." Fortunately he was able to return to work October 27, 1948, after an illness of approximately three months.

In our opinion this case is very much in point with and practically ruled by *Loudon v. H. W. Shaull & Sons*, 140 Pa. Superior Ct. 106 (Allocatur refused *ib.* xxxvii), 13 A. 2d 129. It was there held that the death of claimant's decedent, from typhoid fever caused by the drinking of contaminated water sometime in the course of his employment, was not the result of an accident within the meaning of the Workmen's Compensation Act. This Court said, in an opinion by BALDRIGE, J., later P. J. (pages 114, 115): "If we accept the appellee's contention, which was adopted by the court below, that the drinking of contaminated water by the deceased constituted an accident, it would seem to logically follow that if an employe at work contracts a cold, influenza, tuberculosis, pneumonia, or any other disease by normally and naturally breathing in germs the presence of which is traceable to the conditions or surroundings where he

worked, the employer is liable. We are of the opinion such a result was not contemplated by the legislature."

Contracting Weil's disease by eating contaminated food is no more an accident in the "usual, ordinary, popular sense" of the word (*Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 577, 164 A. 724), than contracting typhoid fever by drinking contaminated water. *Loudon v. H. W. Shaull & Sons,* supra.

This Court has always been liberal in its interpretation of both the Workmen's Compensation Act and the Occupational Disease Act, but, as was said in the *Loudon* case (page 115), "we cannot be bountiful with the money of others by affording relief not given by the law." We must also heed the warning of the present Chief Justice of our Supreme Court that "In cases of this nature, there is always grave danger of overlooking the fact that the Compensation Act is what it purports to be—an act to compensate for accidental injuries and not one to insure the life and health of the employee": *Monahan v. Seeds & Durham,* 336 Pa. 67, 74, 6 A. 2d 889.

Judgment reversed and here entered for defendant.