## Henry v. Prudential Insurance Company of America

580

*Allen O. Olin* and *Arthur A. Moorshead*, for plaintiff.

*Warrin C. Meyers*, of *Rawle & Henderson*, and *Gawthrop & Greenwood*, for defendant.

GAWTHROP, P. J., August 2, 1963.—Defendant filed a preliminary objection in the nature of demurrer to plaintiff's amended complaint which seeks to recover under the double indemnity provisions of a life insurance policy. After argument, the matter is before us for decision. The preliminary objection must be sustained.

Three grounds are assigned in support of the demurrer in that the amended complaint:

1. Fails to plead performance of conditions precedent to the right of recovery or that death occurred in the manner prescribed by the policy;

2. Fails to aver a cause of action for accidental death; and

3. Alleges that death was caused by disease which is excluded from the policy coverage. The second part of the first ground assigned may appropriately be considered with and as part of the second and third grounds.

The policy in question provides in pertinent part under the heading "Additional Benefits and Provisions" the following:

"Benefit in Event of Death by Accidental Means as Defined Herein.—Upon receipt at the Home Office of due proof that the death of the Insured occurred as a result, directly and independently of all other causes, of bodily injuries effected solely through external,

violent and accidental means of which (except in case of drowning or of internal injuries revealed by an autopsy) there is a visible contusion or wound on the exterior of the body, the Company will pay, subject to the conditions and exceptions specified below, a sum equal to the face amount of insurance exclusive of any paid-up dividend additions, in addition to the amount of insurance otherwise payable. CONDITIONS AND EXCEPTIONS: . . . (2) No such benefit shall be payable if such death results . . . (g) directly or indirectly from bodily or mental infirmity or disease in any form, or medical or surgical treatment therefor."

The objection to plaintiff's failure to plead performance of conditions precedent is sound. The policy provides that defendant's obligation is subject to the condition, inter alia, of its receipt at the home office of due proof that the insured's death occurred as a result of the type of accident specified. Where a policy contains such a clause the duty to give the notice as stipulated is a condition precedent to recovery and its breach, regardless of prejudice, releases the company from the obligations imposed by the policy: Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211, 215; Meierdierck v. Miller, 394 Pa. 484. To plead a valid cause of action plaintiff must aver either compliance with conditions precedent or a waiver of them: White v. Seaboard Mutual Casualty Co., 73 D. & C. 15; Holy Trinity Baptist Church v. Insurance Company of North America, 67 D. & C. 44; 29A Am. Jur., Insurance, §1374, 491; 46 C.J.S., Insurance, §1283, b(2) 330. The amended complaint lacking such averment is defective in substance but the defect is curable by amendment.

The second question is more difficult. Paragraphs 5 and 6 of the pleading allege as to the death:

"5. On Friday, June 23, 1961, Helen D. Henry became violently ill. On Tuesday morning, June 27,

1961, she died of internal injuries caused by the accidental entry into her body of violent anthrax bacillus from external sources.

"6. After an autopsy was performed upon Helen D. Henry's said body, the cause of death was listed as hemorrhagic pneumonia from Bacillus Anthrax."

Defendant argues that those averments fail to set forth a cause of action under the policy. In effect, plaintiff avers that death was caused by hemorrhagic pneumonia resulting from bacillus anthrax which effected internal injuries caused by the accidental entry into insured's body of "violent anthrax bacillus from external sources," and causing her to become violently ill on June 23, 1961, and to die June 27, 1961. The question presented initially is whether those averments allege death occurring "as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means of which (except in case of drowning or of internal injuries revealed by an autopsy) there is a visible contusion or wound on the exterior of the body." We think they do not.

Plaintiff alleges death caused by "hemorrhagic pneumonia from Bacillus Anthrax". Anthrax is an infectious disease, the sole cause of which is the microorganism called the anthrax bacillus, a bacterium, which may be carried great distances in many ways by many types of carriers, including winds and water supplies, as well as by direct exposure. Thus the possibilities of infection are innumerable. Aspiration of anthrax bacilli is a frequent method of infection, symptoms of which are quite similar to those of a terrific pneumonia, 50 percent of the victims of which die in a matter of hours or, at the most, days. This type of the disease is often called wool sorter's or rag picker's disease: Gray's Attorneys' Textbook of Medicine, 3rd Ed., Ch. 24, page 343, et seq. The pulmonary form of

anthrax or wool sorter's disease occurs in man from infection with bacillus anthrax. It is a disease marked by hemorrhage and serious effusions in the organs and cavities of the body: Stedman's Medical Dictionary, Lawyers' Ed., Waverly Press, Inc., 1961. Thus the effect of plaintiff's averments is that insured died of pulmonary hemorrhages resulting in pneumonia caused by the disease anthrax and stemming from introduction into her body, by some means not alleged, of anthrax bacilli causing the disease.

These are not "internal injuries" as that term is commonly used and understood. But, in any event, the policy provision as to internal injuries revealed by an autopsy merely excludes the requirement, otherwise applicable, that there be a visible contusion or wound on the exterior of the body as an indication of trauma. Nor is the introduction of the bacilli assignable to a single act or occurrence identified in space or time, any more than the introduction into the body of any other germ, such as typhoid or influenza bacilli, not accompanied by a cut, bruise or abrasion, for germs may be inhaled through the nose or mouth or absorbed into the system from other channels of entry. In Loudon v. H. W. Shaull & Sons, 140 Pa. Superior Ct. 106, a workmen's compensation case, it was held that introduction of typhoid germs into decedent's system as a result of drinking contaminated water was not an accidental injury when unaccompanied by some "unexpected and untoward happening at a definite time." The court there said:

"If we accept the appellee's contention, . . . that the drinking of contaminated water by the deceased constituted an accident, it would seem to logically follow that if an employe at work contracts a cold, influenza, tuberculosis, *pneumonia, or any other disease* by normally and naturally breathing in germs the presence of which is traceable to the conditions or surroundings

where he worked, the employer is liable. We are of opinion such a result was not contemplated by the legislature." (Italics supplied.)

It likewise seems that such a result was not contemplated in the policy terms "death . . . as a result, directly and independently of all other causes, of *bodily injuries* effected solely through *external, violent and accidental means*." (Italics supplied.)

In New York it was early held that death resulting from infection caused by bacillus anthrax is death from disease and not compensable under accidental death provisions of a policy not dissimilar in terms to that here involved: Bacon v. United States Mutual Acc. Assn., 123 N. Y. 304, 25 N. E. 399. The only anthrax case in Pennsylvania which has been cited to us, or which we have found, is McCauley v. Imperial Woolen Co., 261 Pa. 312, involving infection of decedent with external anthrax. The circumstantial evidence and medical testimony supported a finding that decedent suffered a scratch on his neck from a "sticker" in wool he was handling and that the bacilli entered his body through the scratch in the skin from contact with infected wool. The Supreme Court recognized anthrax as a "disease" but allowed compensation because the evidence of the scratch on the neck, through which the bacilli entered decedent's body, was sufficient to establish the happening of an accident and a chain of causation resulting in death. McCauley is, therefore, consistent with Bacon, supra, and later Pennsylvania cases, notably Loudon, supra, citing McCauley, preserve the distinction between death resulting from accident introducing disease and death resulting from disease merely.

The meaning of "accident" was held by then Judge Cardozo, of the Court of Appeals of New York, later Justice of the Supreme Court of the United States, in Connelly v. Hunt Furniture Co., 240 N. Y. 83, 147

N. E. 366, not to include the contracting of a disease unless the channel of infection is abnormal, or the result of trauma, and assignable to a determinable occurrence identified in space and time. That definition was approved in both Loudon, supra, and in Gray v. Union Central Life Ins. Co., 146 Pa. Superior Ct. 563. The latter case further held that an allegation that the cause of death was "pneumonia which resulted from working under conditions of exposure" did not aver death resulting directly, independently and exclusively of all other causes from bodily injury effected solely through accidental, external and violent means and denied liability; that pneumonia is a bodily germ disease, and although it may have a traumatic origin, especially where skin is broken, no such origin was alleged or proved. The averments of plaintiff's amended complaint when carefully considered fail to allege traumatic origin of the "hemorrhagic pneumonia" or anything more than contraction of anthrax without specifying the means beyond an implication that the bacilli were breathed into insured's lungs. Such a situation is comparable to drinking contaminated water and, standing alone, does not allege an accident within the policy provisions.

Chase v. Business Men's Assurance Co. of America, 51 F. 2d 34 (C.C.A. 10), held under similar policy provisions that death from typhoid fever resulting from drinking water contaminated with typhus bacilli was not by accidental means; that rather there was an unintentional introduction of the bacilli into the body which set up the disease which caused the death; that in the ordinary sense of the words contracting a disease through normal consumption of food, *air* or water infected with bacilli which causes such disease is not the suffering of "bodily injuries" from accidental means; and that in their ordinary and popular sense the words "bodily injuries" convey the idea of a cut, bruise or

wound rather than physical impairment caused by disease.

To like effect as to "bodily injuries," although not passing on the question of "accident", is Burns v. Employers Liability Assur. Corp., Ltd., of London, 134 Ohio 222, 16 N. E. 2d 316, involving death from amebic dysentery resulting from drinking contaminated water and construing a similar policy which, however, did not include an exclusionary clause covering death from disease. The Ohio court relied upon Bacon and Chase, supra, saying that to call such diseases as pneumonia, typhoid fever and scarlet fever "bodily injuries" is to establish a new nomenclature and classification, whereas those words commonly and ordinarily are used to designate injuries caused by external violence and not to indicate disease.

Plaintiff cites a host of cases to support a contrary conclusion, but careful examination of them indicates that most are distinguishable either on their facts or in the policy provisions, or both. The Pennsylvania cases he principally relies on show the presence of the "unexpected and untoward happening at a definite time" referred to in Loudon, supra, viz., Arnstein v. Metropolitan Life Ins. Co., 329 Pa. 158, and H. W. Pickett v. Pacific Mutual Life Ins. Co., 144 Pa. 79. So do those from other jurisdictions, such as Anna Christ v. Pacific Mut. Life Ins. Co., 312 Ill. 525, 144 N. E. 161, and Barnett v. John Hancock Mut. Life Ins. Co., 304 Mass. 564, 24 N. E. 2d 662.

Plaintiff strongly relies on McFarland v. Mass. Bonding & Ins. Co., 157 Tenn. 254, 8 S. W. 2d 369, and 160 Tenn. 546, 26 S. W. 2d 159. It is distinguishable on its stipulated facts as to the means of entry of the infection into the body and as to the imbedding of the germs in the insured's eye.

Under Loudon, supra, mere aspiration of the bacilli does not meet the test of accident, and under Arn-

stein, supra, it does not allege an injury that was "violent", i.e., by physical force, however slight, efficient in producing a harmful result. Cases such as McCauley, supra, involving a disease caused by an accident are inapposite. Those such as Kubacki v. Metropolitan Life Ins. Co., 193 Pa. Superior Ct. 138, cited by plaintiff and involving preexisting substantial infirmities, have no application here. The remaining authorities cited from other jurisdictions are not persuasive.

A final question arises under the exclusionary clause providing:

"No such benefit shall be payable if such death results . . . (g) directly or indirectly from bodily or mental infirmity or disease in any form, or medical or surgical treatment therefor."

Even if the death as alleged satisfied the policy provisions by occurring as a result of bodily injuries effected solely through external, violent and accidental means recovery would be barred by the above quoted condition and exception. Bacon, supra, held that death caused by bacillus anthrax was death caused by disease within such an exclusionary clause, and not by accident. It equated such death with death from typhoid fever and other diseases, the difference being only in the bacilli involved or in the manner in which they enter the body. In State ex rel. Prudential Insurance Co. of America v. Shain, 344 Mo. 623, 127 S. W. 2d 675, construing policy terms almost identical with those here involved, where insured contracted typhoid fever causing death, it was held, without passing upon the question of accidental death, that recovery was barred by the exclusionary clause. The court cited and relied on Burns and Chase, supra. In the course of the opinion it was said:

"Common understanding would force the conclusion that typhoid fever, the disease, was the proximate,

procuring cause of death. Any bodily injuries suffered were an incident of the disease. Respondents' construction fails to give effect to the plain words of the policy which exclude death which results from disease. To uphold such a construction would decree that all death from disease would be covered by the policy because a normal person would not intentionally expose himself to the bacteria which cause disease. Therefore, contracting disease would always be accidental. There would then be no difference between an accident and a health policy."

The law of Pennsylvania is in harmony with the above cases. In Westbrook v. Continental Life Insurance Co., 111 Pa. Superior Ct. 563, involving a policy containing an exclusionary clause applicable if "death shall result directly or indirectly, wholly or partly . . . from poisoning, infection or any kind of illness or disease," where insured died of septicemia due to injury after a log struck his leg causing an abrasion through which germs entered the body, it was held that death resulted directly or indirectly, wholly or partly from the infection and that double indemnity could not be recovered. By analogy the insured's death in this case resulted "directly or indirectly from . . . disease in any form" under the exclusionary clause. See also McIntyre v. Equitable Life Assurance Society of the U. S., 324 Pa. 417, as to death from "bodily infirmity", barring recovery.

On the averments of the amended complaint, it is clear plaintiff may not recover and the demurrer must be sustained. But final judgment may not be entered except in a clear case; where a doubt exists it should be resolved against entry of the judgment: Sun Ray Drug Co. v. Lawler, 366 Pa. 571; Birl v. Philadelphia Electric Co., 402 Pa. 297. While it is difficult to see how plaintiff can amend further to state a good cause of action, nevertheless, since that may conceivably be

possible he should have that opportunity and not be foreclosed by entry of judgment against him at this time.

And now, August 2, 1963, the preliminary objection in the nature of demurrer is sustained and plaintiff is allowed 20 days from the date hereof to file a second amended complaint.