

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2006

# USX Corp v. Liberty Mutl Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 04-1277

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USX Corp v. Liberty Mutl Ins Co" (2006). *2006 Decisions.* Paper 1184.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1184

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 04-1277 and 04-1300

———

USX CORPORATION

v.

LIBERTY MUTUAL INSURANCE COMPANY,

Appellant in No. 04-1277

———

USX CORPORATION,

Appellant in No. 04-1300

v.

LIBERTY MUTUAL INSURANCE COMPANY

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 01-00889)
Honorable Donald E. Ziegler, Chief Judge,
and Honorable Terrence F. McVerry, District Judge*

———

Argued March 7, 2006

———

*Chief Judge Ziegler entered the June 27, 2002 order, adopting the
magistrate judge's Report and Recommendation, and Judge McVerry
entered the final judgment on January 9, 2004.

Mark A. Aronchick (argued)
Daniel Segal
Hangley, Aronchick, Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103

Joseph G. Blute
Mintz, Levin, Cohn, Ferris,
Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111

    <u>Attorneys for Appellant/Cross-Appellee</u>

Joseph J. Bosick (argued)
Alfred S. Pelaez (argued)
Pietragallo, Bosick & Gordon
One Oxford Centre, 38th Floor
301 Grant Street
Pittsburgh, PA 15219

    <u>Attorneys for Appellee/Cross-Appellant</u>

Mark F. Horning
Steptoe & Johnson
1330 Connecticut Ave., NW
Washington, D.C. 20036

    <u>Attorneys for Amici Curiae</u>
    <u>American Insurance Association,</u>
    <u>Property Casualty Insurers Association</u>

_____

**Honorable Ronald L. Buckwalter, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

of America, The Insurance Federation of
Pennsylvania Inc., and the Pennsylvania
Compensation Rating Bureau

Laura A. Foggan
John C. Yang
1776 K Street NW
Washington, DC 20006

   Attorneys for Amici Curiae
   Complex Insurance Claims
   Litigation Association

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before the court on an appeal by
defendant Liberty Mutual Insurance Company ("Liberty Mutual")
from an order of the district court entered on June 27, 2002, granting
partial summary judgment in favor of plaintiff USX Corporation
("USX") on its contract claims arising out of Liberty Mutual's refusal
to defend and indemnify USX in various actions brought against it
under a Workmen's Compensation/Employers' liability policy
("WC/EL policy") that Liberty Mutual had issued to USX.[1] Liberty
Mutual also appeals from the final judgment entered in favor of USX
on January 9, 2004. The case is also before us on a cross-appeal that
USX filed from the portion of the district court's order of June 27,
2002, granting Liberty Mutual partial summary judgment and the
judgment entered on January 9, 2004, in favor of Liberty Mutual on
USX's claim charging bad faith denial of insurance coverage. For the
reasons we set forth below, we will reverse the order of June 27,
2002, and the judgment of January 9, 2004, to the extent that they are

_____

[1]Although this action implicates multiple policies, inasmuch as
the issue before us is the same under all the policies we refer to the
action as though it involves a single policy. In this regard we note that
the magistrate judge in her Report and Recommendation that became the
district court's opinion sometimes referred to all the policies singularly.

3

in favor of USX and will affirm the order and judgment to the extent that they are in favor of Liberty Mutual. Furthermore, we will remand the case to the district court to enter a final summary judgment in favor of Liberty Mutual on the portions of the summary judgment that we are reversing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and the Relevant Insurance Contract

USX is a Delaware corporation with its principal place of business in Pennsylvania, and Liberty Mutual is a mutual insurance company founded by an act of the Massachusetts Legislature with its principal place of business in that state.[2] In 1912, Liberty Mutual issued to USX a standard form WC/EL policy, which the parties annually renewed until January 1, 1980.[3] Although issued in Pennsylvania, the WC/EL policy provided coverage to USX for specified operations in identified states, including some USX operations in Texas.

The WC/EL policy had two parts: "Coverage A– Workmen's Compensation" ("Coverage A") provided coverage for USX's statutory liability for workmen's compensation claims; and "Coverage B– Employers' Liability" ("Coverage B") provided coverage for liability that the exclusivity provisions of the applicable workmen's compensation statute did not bar. Thus, ordinarily, at least, Coverage B covered workmen's claims that were not based on no fault workmen's compensation statutory provisions.[4] The portion of the WC/EL policy most germane to this appeal is Coverage B, which covered "all sums which [USX] shall become legally obligated to pay

---

[2]The facts relevant to our decision are undisputed, and we refer to the Joint Appendix filed by counsel as "J.A."

[3]Only the period between January 1, 1952 and January 1, 1980, is at issue. The parties have settled their dispute regarding coverage before January 1, 1952.

[4]Coverage B claims usually, if not always, are predicated on common law principles as sometimes modified by statute. See, e.g., N.J. Stat. Ann. §§ 34:15-1 to 6 (West 2000).

as damages because of bodily injury by accident or disease[.]" J.A. at 662. The WC/EL policy contained a single "Definitions" section, applicable to both Coverage A and Coverage B, containing the following definition:

> Bodily Injury by Accident; Bodily Injury by Disease
> The contraction of disease is not an accident within the meaning of the word 'accident' in the term 'bodily injury by accident' and only such disease as results directly from a bodily injury by accident is included within the term 'bodily injury by accident.' The term 'bodily injury by disease' includes only such disease as is not within the term 'bodily injury by accident.'

J.A. at 662.[5] The policy did not define "accident" or "disease."

While Coverage B insured USX for damages resulting from either "bodily injury by accident" or "bodily injury by disease," there was a notable limitation on the latter coverage in that the policy did not cover a claim for "bodily injury by disease" "unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought against the insured for damages[.]" J.A. at 662. This thirty-six-month claim limitation period, by its terms, applies only to claims for "bodily injury by disease." J.A. at 662.

### B. The Underlying Complaints and the Claim for Coverage

Beginning in 1990, certain of USX's former employees and their survivors filed hundreds of non-workmen's compensation actions against USX in Texas, seeking damages for injuries sustained by the former employees while allegedly being exposed to asbestos products and/or asbestos-contaminated premises.[6] On June 27, 1997,

---

[5]At oral argument, counsel for USX suggested that the quoted definition did not apply to both Coverage A and Coverage B. We disagree and note that the WC/EL policy uses the limiting phrase "Under coverage A" when limiting application of a provision to Coverage A or the phrase "Under coverage B" when limiting application of a provision to Coverage B. The definition for "Bodily Injury by Accident; Bodily Injury by Disease" does not contain any such limiting phrase.

[6]The employees' claims against their employer USX are not barred in Texas which permits the additional recovery of exemplary

seven years after the former employees and their survivors filed the initial asbestos-related lawsuits against USX, USX sought coverage for defenses and indemnification from Liberty Mutual in the underlying actions. By letter dated February 28, 1998, from its in-house coverage counsel, Liberty Mutual denied USX's claim for coverage, explaining that there was no potential coverage and citing, inter alia, the thirty-six-month claim limitation provision.

### C. The Proceedings in the District Court

In response to the Liberty Mutual disclaimer, USX filed this diversity of citizenship action on May 18, 2001, against Liberty Mutual in the district court asserting a claim for breach of insurance contract (Count I), seeking a declaratory judgment that there was coverage (Count II), claiming insurance bad faith under 42 Pa. Const. Stat. Ann. § 8371 (West 1998) (Count III), seeking indemnity (Count IV), and asking for contract reformation (Count V). In sum, USX alleged that the policy covers asbestos-related claims because they are for "bodily injury by accident," to which the thirty-six-month claim limitation provision does not apply, or, in the alternative, that the contract should be reformed as it "defeated the reasonable expectations of [USX] and is thus contrary to public policy." See J.A. 52. The district court referred the case to a magistrate judge under 28 U.S.C. §§ 636(b)(1)(A) and (B).

On October 1, 2001, Liberty Mutual filed a motion for summary judgment. As with its initial denial of coverage, Liberty Mutual asserted that the policy did not cover the underlying claims because they were for "bodily injury by disease" and thus the thirty-six-month claim limitation provision precluded coverage for them inasmuch as the plaintiffs did not file their actions within thirty-six months following the end of the policy period.[7] On February 21, 2002, USX filed a cross-motion for summary judgment as to Counts I-IV.

_____

damages against an employer in wrongful death cases, where gross negligence or intentional misconduct is shown. Tex. Lab. Code Ann. § 408.001(b) (Vernon 2005). The plaintiffs named additional defendants in the actions, but we need not list them.

[7]USX does not assert that any of the plaintiffs made a written claim or brought a suit against USX prior to thirty-six months after the end of the policy period.

6

The magistrate judge to whom the court referred the case issued a Report and Recommendation on May 15, 2002, recommending that the court grant summary judgment in favor of USX on its claims for breach of contract, declaratory relief and indemnity (Counts I, II, and IV, respectively), but that the court grant summary judgment in favor of Liberty Mutual on the insurance bad faith claim (Count III). The magistrate judge concluded with regard to Counts I, II and IV that the definition of "bodily injury by accident" was ambiguous and consequently recommended that the court construe it in favor of USX as the insured.

The magistrate judge in reaching her conclusion relied on the Pennsylvania Supreme Court opinion in J.H. France Refractories Co. v. Allstate Insurance Co., 626 A.2d 502 (Pa. 1993), for the proposition that "exposure to asbestos causes immediate 'bodily injury' under the terms of an insurance policy that offers coverage for 'bodily injury.'" J.A. at 8. In light of this immediate bodily injury, the magistrate judge reasoned that because "no one intends to inhale asbestos fibers and develop asbestosis," "the injury [therefore] occurs by an accident that later results in a disease." J.A. at 13. According to the Report and Recommendation, this circumstance raises at least a "reasonable interpretation" that the underlying claims were for "bodily injury by accident" and thus the Liberty Mutual policy covered USX against them. J.A. at 11, 13. In view of the magistrate judge's recommendation with respect to the meaning of the policy, she recommended that the court dismiss Count V seeking reformation as moot. The magistrate judge, however, recommended that the court grant summary judgment in favor of Liberty Mutual on Count III because she believed that Liberty Mutual "demonstrated a reasonable basis for its refusal to defend and indemnify USX," specifically its reliance on authority from another jurisdiction in the absence of applicable precedent from the courts of Pennsylvania. J.A. 17.

Both parties filed timely objections to the magistrate judge's Report and Recommendation, following which the district court, after a de novo review, issued an order on June 27, 2002, which adopted the Report and Recommendation as the opinion of the court and dismissed Count V as moot.[8] Subsequently, the parties agreed that Liberty Mutual as a result of the June 27, 2002 order, owed USX

---

[8] Because the district court adopted the magistrate judge's Report and Recommendation, we will refer to the adopted opinion as that of the district court.

7

$2,200,000, subject to Liberty Mutual's right to appeal, for attorneys' fees, defense costs, and pre-judgment interest. The court then entered a final judgment on January 9, 2004, in favor of USX on Counts I, II, and IV and in favor of Liberty Mutual on Count III.[9] The January 9, 2004 judgment included an award of $2,200,000. Thereafter both parties timely filed notices of appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

The district court exercised diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have jurisdiction over the appeal and cross-appeal under 28 U.S.C. § 1291. We exercise plenary review of the order granting summary judgment. See Dilworth v. Metro. Life Ins. Co., 418 F.3d 345, 348 (3d Cir. 2005); Haugh v. Allstate Ins. Co., 322 F.3d 227, 230 (3d Cir. 2003). We will affirm an order granting summary judgment if our review reveals that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts in the light most favorable to the party against whom summary judgment was entered. See Dilworth, 418 F.3d at 349; Haugh, 322 F.3d at 230. The parties agree that Pennsylvania law governs this action.[10]

## IV. DISCUSSION

### A. Appeal by Liberty Mutual

---

[9]In its final judgment of January 9, 2004, the district court stated that "[t]he parties have settled and finally resolved all other claims and issues between them, except that each has reserved the right to appeal their respective adverse decision of the Court." J.A. at 35.

[10]We note that USX in its brief asserts that the materials submitted to Liberty Mutual's in-house coverage counsel were not adequate for counsel to know "that the coverage issue was governed by Pennsylvania law; nor indeed any knowledge as to what law governed the insured's demand for indemnity and a defense." Cross-Appellant's br. at 8. We are perplexed by this implicit criticism inasmuch as USX agrees that Pennsylvania law is applicable here.

In asserting that the district court should have entered summary judgment in its favor on Counts I, II and IV, rather than in favor of USX, Liberty Mutual argues that the court erred in concluding that the policy language at issue was ambiguous. Liberty Mutual submits that, when viewed in the context in which the parties made the contract, the only reasonable interpretation of the policy is that the underlying asbestos-related claims are not claims for "bodily injury by accident" but instead are claims for "bodily injury by disease," to which the thirty-six-month claim limitation period applies. In particular, Liberty Mutual asserts that the district court's analysis ignored a substantial body of Pennsylvania workmen's compensation law defining the term "accident" which necessarily informs the employers' liability coverage at issue inasmuch as it was written in a single policy also providing workmen's compensation coverage. Of course, in light of the circumstance that the Texas plaintiffs brought the underlying actions well beyond the expiration of the thirty-six-month claim limitation period and did not make written claims within that period, if Liberty Mutual is correct it owes no duties to USX on the WC/EL policy involved here.

USX counters that the meaning of the disputed policy language should be ascertained by reference to J.H. France Refractories and that "the workers' compensation precedents upon which Liberty Mutual almost exclusively relies have no relevance." Appellee's br. at 26 (emphases in original). Thus, in USX's view, this case involves underlying claims for "bodily injury by accident" to which the thirty-six-month claim limitation period does not apply. Our review of the materials submitted and the relevant authorities leads us to agree with Liberty Mutual.

The district court was, of course, correct to the extent that it observed that in Pennsylvania a court construes ambiguities in an insurance policy strictly against the insurer. See, e.g., Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it." Selko, 139 F.3d at 152 n.3 (internal citations and quotation marks omitted). In construing policy language, courts should consider any special usage "[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense[.]" Sunbeam

9

Corp. v. Liberty Mut. Ins. Co., 781 A.2d 1189, 1193 (Pa. 2001).[11]

While the terms "disease" and "accident" do not appear alongside the definitions of "bodily injury by disease" and "bodily injury by accident," Liberty Mutual correctly argues that the meaning of those terms with respect to employers' liability under Coverage B in the policy at issue is informed by their usage in the closely related context of workmen's compensation claims. Carriers write insurance for both types of claims to cover claims arising out of employee workplace injuries.[12] Accordingly, as one leading treatise explains,

> workers' compensation is routinely written in combination with an employer's liability policy to provide protection for those situations where worker's compensation may not apply and thus avoid a gap in protection because employee claims subject to workers' compensation law are generally excluded in other types of liability policies.

7B John Allan Applebaum, Insurance Law and Practice § 4571, at 2 (Berdal ed. 1979). Courts of last resort in several states have observed, consistently with this explanation, that "employers' liability insurance is traditionally written in conjunction with workers' compensation policies." Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920, 927 (Cal. 1986); see also Travelers Indem. Co. v. PCR, Inc., 889 So.2d 779, 784 n.7 (Fla. 2004); Schmidt v. Smith, 713 A.2d 1014, 1017 (N.J. 1998). Such is the case here where the employers' liability coverage at issue is part of a WC/EL policy

---

[11]The Pennsylvania Supreme Court explained in Sunbeam that "[t]he parol evidence rule does not apply in its ordinary strictness where the existence of a custom or usage to explain the meaning of words in a writing is concerned," and that an ambiguity need not be shown before looking to usage. 781 A.2d at 1193 (citing Restatement (Second) of Contracts §§ 202(5), 220 cmt. d (1979)). Instead, absent an express provision to the contrary, "custom or usage, once established, is considered a part of a contract and binding on the parties though not mentioned therein, the presumption being that they knew of and contracted with reference to it." 781 A.2d at 1193.

[12]Even though we refer to "workplace" injuries we are well aware that some employee injuries are within the scope of workmen's compensation laws though they occur away from the workplace.

containing a single "Definitions" section applicable to both Coverage A and Coverage B.  Accordingly, although to the best of our knowledge the Supreme Court of Pennsylvania has not considered the precise issue before us, we predict that it would look to the substantial body of workmen's compensation precedent to inform its construction of the terms "disease" and "accident" in a related employers' liability policy, such as the one involved here.[13]  After all, it is logical that the contracting parties would not use the term "accident" in a WC/EL policy intending the term to have one meaning under Coverage A and another under Coverage B, when the coverages are written in conjunction and are set forth in a single document with one set of definitions.

At the time the parties entered into the policy at issue, the term "accident" had a special meaning based on its usage in the context of workmen's compensation.  Inasmuch as the Pennsylvania Workmen's Compensation Act ("WCA"), as the legislature originally enacted it in 1915, provided benefits only for injury or death resulting from an "accident" in the course of employment but did not define "accident," the courts fashioned a definition of that term.  See Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.), 525 A.2d 1204, 1208 (Pa. 1987).  The courts defined the term "accident" as a "sudden and unexpected event," with "[a] sudden event impl[ying] a distinct happening or occurrence at a particular time." Loudon v. H.W. Shaull & Sons, 13 A.2d 129, 130 (Pa. Super. Ct. 1940) (internal citation and quotation marks omitted).  Loudon is instructive because it involved a claimant who sought compensation after contracting typhoid from contaminated drinking water.  In differentiating between an "accident" and a "disease," the court in Loudon adopted the following language from Matter of Connelly v. Hunt Furniture Co., 147 N.E. 366, 367 (N.Y. 1925):

> Germs may indeed be inhaled through the nose or mouth or absorbed into the system through the normal channels of entry.  In such cases their inroads will

---

[13]None of the parties or the amici curiae has cited a Pennsylvania Supreme Court or Superior Court case dealing with the precise issue before us, and in our research we have not found one.  But we are obliged to predict how the Supreme Court of Pennsylvania would rule on the issue.  See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 303 (3d Cir. 2004); Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 486 (3d Cir. 1997).

11

seldom, if ever, be assignable to a determinate or single act, identified in space or time. . . . For this reason as well as for the reason that absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident.

Id. at 132 (internal citation omitted); see also Ciabattoni v. Birdsboro Steel Foundry & Mach. Co., 125 A.2d 365, 368 (Pa. 1956) (defining accident as "a definite happening or occurrence or event of which the employee is almost invariably aware," as distinguished from an occupational disease, which "is latent and insidious and the resultant disability is often difficult to determine"). Employing this contemporaneous industry usage of the terms "accident" and "disease," we conclude that the only reasonable interpretation of the term "bodily injury by accident" excludes the underlying claims for asbestos-related diseases.[14]

Accordingly, we reject the district court's contrary conclusion that the type of injuries involved in the underlying actions "occur[ ] by an accident that later results in a disease" because "no one intends to inhale asbestos fibers and develop asbestosis." J.A. at 13. To us, at least, it is clear that the district court's conclusion under the policy at issue contravenes the usage of the term "accident," and renders certain policy provisions essentially meaningless. Most notably, under the district court's conclusion the term "bodily injury by disease" would be practically meaningless inasmuch as nearly every microscopic injury resulting from indeterminate, generalized exposure to an agent would be considered a "bodily injury by accident" because no one intends to be injured. See Riverwood Int'l Corp. v. Employers Ins. of Wausau, 420 F.3d 378, 383 (5th Cir. 2005); Hubbs v. Anco Insulations, Inc., 747 So.2d 804, 807-08 (La. Ct. App. 1999).

---

[14]We are mindful that the Pennsylvania legislature has made revisions to the WCA, including, inter alia, replacement of the term "accident" with the term "injury." See Pawlosky, 525 A.2d at 1208-09. We have considered the revisions and have concluded that they do not affect our analysis. We also are aware that the legislature has adopted the Occupational Disease Act, see 77 Pa. Stat. Ann. § 1201 et seq. (West 2002), which includes asbestos-related diseases among its list of enumerated "occupational diseases," id. at § 1208. This law, like the revisions to the WCA, does not affect our analysis.

12

We also are of the view that the district court's construction effectively would read out of the policy the "Definitions" clause which recites that "[t]he contraction of disease is not an accident within the meaning of the word 'accident' in the term 'bodily injury by accident.'" See J.A. at 662. Pennsylvania courts long have admonished that "contract terms will not be construed in such a manner so as to render them meaningless," Girard Trust Bank v. Life Ins. Co. of N. Am., 364 A.2d 495, 498 (Pa. Super. Ct. 1976), and we decline to do so here. Lastly, the district court's construction would produce an anomalous result in which the term "bodily injury by accident," as used by the parties in the WC/EL policy, means one thing under Coverage A but something else under Coverage B, despite its inclusion in a single definition section applicable to both.

The decision in J.H. France Refractories, 626 A.2d 502, on which USX primarily relies, is not germane to the issue before us. USX asserts that in J.H. France Refractories, "the Pennsylvania Supreme Court accepted as a scientific fact that exposure to asbestos causes an immediate bodily injury and that it is that injury that leads to and causes the subsequent asbestos-related disease." Appellee's br. at 25 (emphases in original).

The issue here, however, is not whether asbestos exposure causes an injury, a proposition that Liberty Mutual does not dispute, but is instead whether the underlying claims for asbestos-related injuries are claims for "bodily injury by accident" or "bodily injury by disease." J.H. France Refractories does not provide guidance on this question because in that case the Pennsylvania Supreme Court addressed coverage under commercial general liability insurance policies, construing the terms "bodily injury" and "occurrence" rather than the terms at issue here.[15] Unlike workmen's compensation policies, general liability insurance policies are not written in conjunction with employers' liability policies. Indeed, while workmen's compensation policies and employers' liability policies both address claims arising out of employee workplace injuries, commercial general liability policies generally exclude injuries to

---

[15]Indeed, notwithstanding the district court's grant of partial summary judgment in favor of USX, it recognized that J.H. France Refractories was not controlling as it "[did] not hold that the inhalation of asbestos fibers is an immediate accidental injury, but only that such exposure constitutes an immediate bodily injury." J.A. at 16 (internal quotation marks omitted).

13

some, if not all, employees from coverage. See 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 129:10 (3d ed. 2005). Therefore, inasmuch as J.H. France Refractories involved a commercial general liability policy and construed terms materially different than those at issue here, the district court's and USX's reliance on that case is misplaced.

Finally, on the policy construction issue we observe that our conclusion is consistent with that reached by other courts. See Riverwood, 420 F.3d at 378; Hubbs, 747 So.2d at 804. In Riverwood and Hubbs the courts concluded that terms identical to those here in standard employer's liability policies were subject to only one reasonable interpretation– that an asbestos-related injury is not a "bodily injury by accident" under the policies. 420 F.3d at 382; 747 So.2d at 807-08. The courts agreed that to find otherwise "would be to subsume the definition of bodily injury by disease into the definition of bodily injury by accident." Hubbs, 747 So.2d at 807-08; Riverwood, 420 F.3d at 383.[16] We realize that those cases are not binding on the Pennsylvania courts nor on this court when applying Pennsylvania law. Nevertheless we find their construction of identical terms in standard employers' liability policies to be persuasive and to comport with our understanding of the plain meaning of the policy at issue here.

### B. Cross-appeal by USX

As a preliminary matter on the cross-appeal, we address Liberty Mutual's pending motion to strike portions of what USX styles as its "Reply Brief on Behalf of Appellee/Cross-Appellant, USX Corporation." Specifically, Liberty Mutual moved to strike those portions of the brief that address issues related to Liberty Mutual's appeal but are outside of the scope of USX's cross-appeal. Liberty Mutual's motion is meritorious as the inclusion of these portions in the brief contravenes Fed. R. App. P. 28(c), which provides that "[a]n appellee who cross-appealed may file a brief in reply to the appellant's response to the issues presented by the cross-appeal." Moreover, Rule 28(c) does not allow the cross-appellant to use its reply brief as a sur-reply to the appellant's opening brief. See

---

[16]We note further that the Court of Appeals for the Fifth Circuit in Riverwood similarly looked to the applicable body of state workmen's compensation case law to discern the industry usage of the term "accident." See 420 F.3d at 383.

Casas v. Am. Airlines, Inc., 304 F.3d 517, 526 (5th Cir. 2002); Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1092 (10th Cir. 2001) ("If the latter portion of [cross-appellant's] 'Reply Brief' had been submitted to the Clerk of Court under the correct title, 'Appellee's Sur-Reply Brief,' it would not have been accepted for filing."). Because USX's opposition to the motion to strike lacks merit, we grant Liberty Mutual's motion to strike those portions of the reply brief related to issues that USX did not appeal.[17]

Turning to the merits of the cross-appeal, we are concerned only with the district court's grant of summary judgment in favor of Liberty Mutual on USX's claim for bad faith denial of coverage (Count III). As the foregoing discussion of Liberty Mutual's appeal portends, we will affirm the grant of summary judgment in favor of Liberty Mutual on this claim because USX's bad faith claim necessarily fails in light of our determination that Liberty Mutual correctly concluded that there was no potential coverage under the policy. See The Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (affirming district court which held that, under Pennsylvania law, "bad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the

---

[17]We have written at length on this briefing matter to give guidance to the bar. While there is no doubt but that USX legitimately filed its cross-appeal, we point out that the situation here is similar to that when an appellee files an unnecessary cross-appeal when it seeks only an affirmance of the district court order, see, e.g., Kontakis v. Beyer, 19 F.3d 110, 112 (3d Cir. 1994), and thereby sets up a situation in which it inappropriately can file an additional brief. In that situation we may dismiss the cross-appeal. See, e.g., Rite Aid of Pa. v. Houstoun, 171 F.3d 842, 849 (3d Cir. 1999).

USX asserts that it was necessary for it to include the materials constituting a sur-reply in its reply brief on its cross-appeal because it faced the situation of having to respond to Liberty Mutual and its "captive Amici" by whom USX claims to have been "triple teamed." Cross-Appellee's Opp'n at 3-4. This excuse does not impress us for if USX wanted to submit a brief not in accordance with Fed. R. App. P. 28(c), its appropriate course would have been to seek leave of this court, as it did with its previous unsuccessful requests to exceed page limitations in responding to Liberty Mutual's appeal.

15

insurer had good cause to refuse to defend").[18]


## V. CONCLUSION

For the foregoing reasons, we will reverse the order granting partial summary judgment in favor of USX entered on June 27, 2002, and will reverse the final judgment in its favor entered on January 9, 2004, including the $2,200,000 monetary award, and will affirm the order granting partial summary judgment and final judgment in favor of Liberty Mutual.  In addition, inasmuch as Liberty Mutual was entitled to a complete summary judgment on its motion in the district court, we will remand the case to the district court for entry of a summary judgment in its favor on Counts I, II, and IV of the complaint.  See Coar v. Kazimar, 990 F.2d 1413, 1416 (3d Cir. 1993).

---------------

[18]USX cites Britamco Underwriters, Inc., v. C.J.H. Inc., 845 F. Supp. 1090, 1093-94 (E.D. Pa.), aff'd, 37 F.3d 1485 (3d Cir. 1994) (table), for the proposition that an insurer's duty to defend may be broader than its duty to indemnify.  We do not doubt this proposition, but, as Britamco notes, the duty to defend ends if "the insurer can confine the claim to recovery that is not within the scope of the coverage."  Id.  In this case Liberty Mutual has done exactly that, and therefore it has neither the duty to defend nor the duty to indemnify USX.

16