NOTICE

Decision filed 01/27/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180396-U

NO. 5-18-0396

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| APEX OIL COMPANY, INC. (successor-by-merger to Clark Oil & Refining Corporation), | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 12-L-1962 |
| ARROWOOD INDEMNITY COMPANY (f/k/a Royal Indemnity Company, individually and as successor by merger with Royal Insurance Company of America f/k/a Royal Globe Insurance Company), | ) ) ) ) ) ) | Honorable |
| Defendant-Appellee. | ) ) ) | William A. Mudge, Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: Complaint allegations that exposure to asbestos caused asbestos-related disease and conditions clearly fell within coverage for "bodily injury by disease" afforded by employers' liability insurance policies, "bodily injury by disease" coverage exclusion was applicable, and therefore, the insurer's duty to defend was not triggered.

¶ 2   The plaintiff, Apex Oil Company, Inc. (Apex), successor-by-merger to Clark Oil & Refining Corporation (Clark), filed an action in the circuit court of Madison County

1

against the defendant, Arrowood Indemnity Company (Arrowood), an employers' liability insurer. Apex alleged that in declining to defend it in an underlying asbestos-related suit filed by a former employee's estate, which resulted in settlement between Apex and the estate, Arrowood breached obligations to defend and indemnify Apex pursuant to its employers' liability policies. Arrowood filed a counterclaim seeking a declaratory judgment that it had no duty to defend or indemnify Apex in the underlying action. On cross-motions for summary judgment, the circuit court granted summary judgment in Arrowood's favor, finding that Arrowood had no duty to defend Apex under the policy language.

¶ 3    Apex appeals the circuit court's order, arguing that the circuit court erred because the underlying complaint alleged facts potentially within the coverage provisions of the employer's liability policy and that in breaching its duty to defend, Arrowood was estopped from raising policy defenses and must indemnify Apex for the settlement of the underlying suit. For the following reasons, we affirm the circuit court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5    On December 3, 2012, Apex filed a complaint against Arrowood for breach of contract and for penalties and costs pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). In its complaint, Apex alleged that Arrowood had issued to Apex's predecessor applicable employers' liability insurance policies, in effect through various policy periods from 1966 through 1982.[1] Apex alleged that on August 4, 2010,

---

[1]The Arrowood employers' liability policies were issued to Apex's predecessor in Wisconsin. The circuit court applied Illinois law, and Arrowood does not argue on appeal that Illinois law was

2

Mary Krohn, on behalf of the estate of Richard Krohn, filed suit alleging, *inter alia*, that Richard had been exposed to asbestos while working as a laborer for Apex's predecessor from 1957 to 1996, was diagnosed on December 1, 2008, with mesothelioma caused by the asbestos exposure, and died on December 21, 2009. Apex alleged that because its predecessor was an insured under the employers' liability policies and Krohn's allegations fell within coverage provisions of the policies, Arrowood had a duty to defend and indemnify Apex in the underlying Krohn suit. Apex alleged that on September 24, 2010, it tendered the Krohn complaint to Arrowood for defense and indemnity but that on December 6, 2010, Arrowood denied Apex's tender of defense. Apex alleged that it thereafter incurred costs associated with its defense in the Krohn suit, including a confidential settlement amount. Apex also sought recovery under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)) for Arrowood's vexatious and unreasonable refusal to defend or pay indemnity for the underlying Krohn lawsuit.

¶ 6       Apex attached to its complaint the underlying Krohn complaint. In the underlying cause of action against Apex, Mary alleged that during the course of Richard's employment, he was exposed to and inhaled, ingested, or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around, which were manufactured, sold, distributed, or installed by Apex, among others. In count IV of the Krohn complaint, alleging fraudulent misrepresentation against Apex, Mary alleged that as a proximate cause of Richard's exposure to asbestos, he inhaled, ingested, or otherwise absorbed asbestos fibers and became injured. Mary alleged that

inapplicable. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued are forfeited).

Richard expended large sums of monies for the treatment of his "asbestos-induced disease and conditions." Krohn further alleged that Richard had experienced great physical pain and mental anguish as a result of the inhalation, ingestion, and absorption of said asbestos fibers and as a result of his "asbestos-induced disease and conditions" had been prevented from pursuing his normal course of employment. In count V of the Krohn complaint, alleging battery against Apex, Mary alleged that Apex caused asbestos fibers to become trapped in Richard's lungs and engaged in a course of conduct intending that Richard would inhale, ingest, or otherwise absorb asbestos fibers and become injured. In count VI, alleging negligence against Apex, Mary alleged that Richard had "in the past been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions." In count VII, alleging willful and wanton conduct against Apex, Mary alleged that Apex intentionally or with reckless disregard for Richard's safety induced him to continue to work at its facility, causing him bodily harm. In count VIII, alleging premises liability against Apex, Mary alleged that Richard "was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing [Richard] to develop the asbestos disease aforesaid, which disabled and disfigured [Richard]; [Richard] ha[d] in the past been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; and [Richard] ha[d] in the past experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers."

4

¶ 7    Apex also attached to its complaint an applicable workers' compensation/employers' liability insuring agreement with the relevant policy language found in the numerous policies involved. The limit of liability in each policy was $100,000, and the policy language involved two parts: "Coverage A—Workmen's Compensation" and "Coverage B—Employers' Liability."  The policy language provided that the insurer agreed as follows:

"I.    Coverage A—Workmen's Compensation

To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

Coverage B—Employers' Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, *** by any employee of the insured arising out of and in the course of his employment by the insured ***

II.    Defense, Settlement, Supplementary Payments

As respects the insurance afforded by the other terms of this policy the company shall:

(a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent ***

5

(b) ***

> pay all expenses incurred by the company, all costs taxed against the insured in any such proceeding or suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon."

¶ 8 Section III of the policy, entitled "Definitions," described "Bodily Injury by Accident" and "Bodily Injury by Disease." Specifically, section III stated as follows:

> "Bodily Injury by Accident; Bodily Injury by Disease. The contraction of disease is not an accident within the meaning of the word 'accident' in the term 'bodily injury by accident' and only such disease as results directly from a bodily injury by accident is included within the term 'bodily injury by accident.' The term 'bodily injury by disease' includes only such disease as is not included within the term 'bodily injury by accident.' "

¶ 9 Section IV of the policy, entitled "Application of Policy," stated:

> "This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused by or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period."

¶ 10 Pertinent to this dispute, the "Exclusions" section of the policy stated that the policy did not apply:

"(e) under coverage B, to bodily injury by disease unless prior to [36] months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom."

Coverage for "bodily injury by accident" is not similarly constrained by a 36-month time limitation for filing suit found in exclusion (e).

¶ 11    On February 7, 2013, Arrowood filed an answer and counterclaim to Apex's complaint. In its answer, Arrowood admitted that it issued the employers' liability policies from April 30, 1970, until April 30, 1973, and from January 1, 1974, to January 1, 1982. Arrowood also admitted that, on or about September 24, 2010, Apex tendered the Krohn action to Arrowood for defense and indemnity under alleged general liability policies issued to Apex's predecessor, but Arrowood otherwise denied that Apex had tendered the Krohn complaint to Arrowood for defense and indemnity. Arrowood admitted that it did not agree to defend and indemnify Apex under the general liability policies but otherwise denied that on or about December 6, 2010, Arrowood had denied Apex's tender of defense. Among other affirmative defenses, Arrowood asserted that it was not liable under the policies to the extent the claims in the Krohn action did not involve damages because of bodily injury by accident or by disease. Arrowood also asserted a counterclaim against Apex, seeking a declaration that it had no duty to defend or indemnify Apex under the policies and seeking dismissal of Apex's section 155 damages and fees claim.

¶ 12    On October 23, 2017, Apex filed a motion for summary judgment, wherein it sought $186,945.40 for its attorney fees in defending the Krohn case, the cost of its

7

confidential settlement of the Krohn suit, and $49,570.44 for its attorney fees in defending this case through April 20, 2018. In its motion for summary judgment, Apex argued that its notification to Arrowood of the claim in the underlying lawsuit referenced its general liability policies, and thus Arrowood was considered to have received notice in regard to all Arrowood policies running in Apex's favor, including any workers' compensation/employers' liability policies. Apex argued that Arrowood was estopped from raising policy defenses to coverage because Arrowood had refused to defend Apex under a reservation of rights and failed to file a declaratory judgment action.

¶ 13    On January 17, 2018, Arrowood filed a combined opposition to Apex's motion for summary judgment and a cross-motion for summary judgment. In its motion, Arrowood argued that coverage for Richard's "bodily injury by disease" was precluded based on the last-day-of-last-exposure provision in the policy because Richard's last date of last exposure to asbestos took place in 1996, which did not occur during the period of any Arrowood policy, the last of which expired in 1982. Arrowood also noted that its policies contained a 36-month provision that precluded coverage for any written claim or suit against the insured for damages because of "bodily injury by disease" if suit was not made or brought within 36 months after the end of any Arrowood policy period. Arrowood argued that the Krohn complaint was first filed in the circuit court on August 4, 2010, 28 years after the end of the last Arrowood policy expired in 1982. Arrowood thus argued that this provision also precluded coverage for the Krohn action. Arrowood argued that a straightforward comparison of the allegations of the Krohn action against

the provisions of the policy demonstrated that Arrowood did not have a duty to defend Apex.

¶ 14   In its motion for summary judgment, Arrowood also argued that it filed a timely declaratory judgment action against Apex. Arrowood argued that Apex had sought coverage for the Krohn action in 2010 under separate commercial general liability policies issued by Arrowood and that Arrowood had no record of receiving any tender from Apex under the policies at issue here. Arrowood argued that the first time it knew Apex was seeking coverage under the employers' liability policies was Apex's service of the complaint upon Arrowood on December 8, 2012, after the Krohn action had settled.

¶ 15   On April 26, 2018, at the hearing on the parties' cross-motions for summary judgment, Apex argued that Arrowood's duty to defend was triggered pursuant to the policies, especially considering that the allegations of the complaint must be construed liberally in favor of the insured and that a mere possibility of coverage triggered the duty to defend. Apex noted that the Krohn complaint alleged bodily injury due to asbestos exposure during employment years that the policies were in effect. Apex argued that "there was a possibility of coverage under the policy, [Arrowood] did no[t] defend," and therefore, Arrowood was estopped from raising coverage defenses not mentioned in the denial letter.

¶ 16   On July 20, 2018, the circuit court, adopting Arrowood's tendered order, denied summary judgment in favor of Apex and granted summary judgment in favor of Arrowood. In its order, the circuit court held that because the Krohn complaint alleged "bodily injury by disease" and that Richard had been exposed to asbestos from 1957 to

9

1996, his last day of last exposure did not occur during any Arrowood policy as required to trigger coverage under the policies. The circuit court also concluded that the 36-month provision applicable to "bodily injury by disease" in the policy provided a separate basis to preclude coverage under the policies. The circuit court concluded that because of the applicable exclusions, Arrowood had no duty to defend Apex, and thus, Apex's argument that Arrowood was estopped from relying upon its defenses because it did not file an earlier declaratory judgment action was unavailing. On August 16, 2018, Apex filed its timely notice of appeal.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Apex argues that the circuit court erred in denying summary judgment in its favor because the underlying Krohn complaint alleged a potentially covered claim for "bodily injury by accident" that triggered Arrowood's duty to defend. Arrowood counters that the underlying allegations did not trigger duties pursuant to the policy because the allegations involved "bodily injury by disease" and thus the 36-month limitation and the last-day-of-last-exposure limitation precluded coverage. Arrowood further argues that Apex is precluded from asserting that the underlying complaint alleged "bodily injury by accident" for failing to raise it in the trial court.

¶ 19    Initially, we address Arrowood's argument that Apex has waived the argument that Arrowood had a duty to defend under the policies because the underlying Krohn complaint's allegations stated facts bringing the case within, or potentially within, the policy's coverage for "bodily injury by accident." Apex filed its action alleging Arrowood's failure to defend and indemnify Apex for the underlying claims pursuant to

10

the policy at issue. Like the circuit court below, to determine the issue before us, *i.e.*, whether the allegations in the Krohn complaint triggered Arrowood's duty to defend Apex in the underlying cause, we must compare the four corners of the underlying complaint with the four corners of the insurance policy and determine whether the facts alleged in the underlying complaint fall within, or potentially within, the insurance policy's coverage. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393 (1993); *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 519-20 (2005). Specifically, we must determine whether the underlying action alleged only claims for "bodily injury by disease," subject to the clauses that the circuit court relied on to deny relief to Apex, including the 36-month limitation, or whether the underlying action also alleged claims for "bodily injury by accident." To review the order entered in Arrowood's favor on the basis that the allegations in the underlying complaint did not trigger Arrowood's duty to defend pursuant to the insurance policy language, we cannot ignore relevant language in the policy or in the complaint.

¶ 20    Further, Apex's argument that Arrowood had a duty to defend based on the insurance policy language, in light of the Krohn complaint, was raised below. Apex's argument on appeal, that Krohn's allegations fell within the policy's "bodily injury by accident" coverage, is merely one argument addressing the issue of policy construction in light of the complaint. Parties must preserve issues or claims for appeal, but "[t]hey are not required to limit their arguments in this court to the same ones made in the trial [court]." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 18; see also *Brunton v. Kruger*, 2015 IL 117663, ¶ 76 ("We require parties to preserve

11

issues or claims for appeal; we do not require them to limit their arguments here to the same arguments that were made below."). Moreover, the rule of waiver is a limitation on the parties, not the courts. Appellate courts have disregarded the waiver rule in order to achieve a just result, and may do so to maintain sound and uniform precedent. *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 58 Ill. App. 3d 28, 31 (1978), *aff'd*, 78 Ill. 2d 381 (1980). Accordingly, we will consider the arguments raised on appeal.

¶ 21 Apex argues that the circuit court improperly entered summary judgment in Arrowood's favor, finding it had no duty to defend. Apex argues that ambiguity in the policy language, which purported to distinguish "bodily injury by disease" from "bodily injury by accident," should be construed in favor of coverage. Apex argues that the Krohn complaint alleged facts involving "bodily injury by disease" and "bodily injury by accident" in that the underlying complaint alleged asbestos-induced mesothelioma, in addition to unspecified injuries, conditions, pain, and loss as a result of absorbing asbestos. Apex thus argues that Krohn's complaint presented, at a minimum, a potentially covered claim such that Arrowood's duty to defend was triggered, even if other allegations in the complaint did not trigger the duty to defend.

¶ 22 "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007); 735 ILCS 5/2-1005(c) (West 2012). "A circuit court's entry of summary judgment is subject to *de novo* review (*General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill.

12

2d 146, 153 (2005)), and the construction of an insurance policy, which presents a question of law, is likewise reviewed *de novo* (*Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004)).” *Virginia Surety Co.*, 224 Ill. 2d at 556.

¶ 23    “[I]n construing the terms in an insurance policy, the court must ascertain the intent of the parties.” *Outboard Marine Corp v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992). “If the terms in the policy are clear and unambiguous, the court must give them their plain, ordinary, popular meaning.” *Id.* “If a term in the policy is subject to more than one reasonable interpretation within the context in which it appears, it is ambiguous.” *Id.* “Ambiguous terms are construed strictly against the drafter of the policy and in favor of coverage.” *Id.* “This is especially true with respect to exclusionary clauses.” *Id.* Policy provisions that purport to exclude or limit coverage will be read narrowly and will be applied only where the terms are clear, definite, and specific. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). “This is so because there is little or no bargaining involved in the insurance contracting process (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325, 335)), the insurer has control in the drafting process, and the policy’s overall purpose is to provide coverage to the insured (see *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 384).” *Outboard Marine Corp.*, 154 Ill. 2d at 119.

¶ 24    In Illinois, the duties to defend and to indemnify are not coextensive. *Id.* at 108. “An insurer’s duty to defend its insured is much broader than its duty to indemnify.” *Id.* at 125. “An insurer may not justifiably refuse to defend an action against its insured

13

unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991).

¶ 25    "The duty to defend is much broader than the duty to indemnify because the duty to defend is triggered if the complaint *potentially* falls within a policy's coverage, whereas the duty to indemnify is triggered only when the resulting loss or damage *actually* comes within a policy's coverage." (Emphases in original.) *Country Mutual Insurance Co. v. Bible Pork, Inc.*, 2015 IL App (5th) 140211, ¶ 16. "To determine if a claim is potentially covered under an insurance policy, a court must compare the allegations in the underlying complaint to the policy language." *Id.*; see also *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154 (2005). "It is well settled that both the underlying complaint and the insurance policy should be liberally construed in favor of the insured and against the drafter of the policy, the insurer." *Country Mutual Insurance Co.*, 2015 IL App (5th) 140211, ¶ 16; see also *Wilkin Insulation Co.*, 144 Ill. 2d at 74. "The duty to defend extends to cases in which the complaint contains several theories or causes of action against the insured and only one of the theories is within the policy's coverage limits." *Country Mutual Insurance Co.*, 2015 IL App (5th) 140211, ¶ 16; see also *Wilkin Insulation Co.*, 144 Ill. 2d at 74.

¶ 26    Once a duty to defend has been triggered, the insurer cannot ignore the claim or simply refuse to defend the insured. See *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-54 (1999). Rather, if the insurer believes that

14

coverage is not provided, the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *Id.* at 150. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage, even if those defenses would have proven to be successful. *Id.* at 150-52. It is then " 'liable for the award against the insured and the costs of the suit, because the duty to defend is broader than the duty to pay.' " *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 741 (2008) (quoting *Murphy v. Urso*, 88 Ill. 2d 444, 451 (1981)). This is an extraordinary remedy, but is warranted in light of the fact that the insurer's duty to defend is "so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Employers Insurance of Wausau*, 186 Ill. 2d at 151.

¶ 27    Nevertheless, the "estoppel doctrine applies only where an insurer has breached its duty to defend" the insured. *Id.* "Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered." *Id.* "These circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." *Id.* (insurer has actual notice, triggering duty to defend, where it knows that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies); see also *Casualty Insurance Co. v. E.W. Corrigan Construction Co.*, 247 Ill. App. 3d 326, 332 (1993) (where insurer received

15

timely notice by employer-insured of potential workers' compensation claim, notice was sufficient to charge the insurer on general liability policy running in favor of the insured).

¶ 28    With these principles in mind, we must determine whether the underlying allegations in the Krohn complaint, construed liberally in favor of coverage, fall potentially within "bodily injury by accident" policy provisions, also construed liberally in favor of coverage. The particular allegations of the complaint at issue, even if groundless, false, or fraudulent, are central to the evaluation of whether a potentially covered claim has been asserted. In the Krohn complaint, Mary alleged that Richard inhaled, ingested, and absorbed large amounts of asbestos fibers, became injured, experienced great physical pain and mental anguish, and expended large sums for the treatment of his asbestos-induced disease and conditions. Mary alleged that Richard had "in the past experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of asbestos fibers" and as a result of his asbestos-induced disease and conditions, Richard was hindered from pursuing his normal course of employment.

¶ 29    Although the policy's coverage under "Coverage B" insured Apex for damages resulting from either "bodily injury by accident" or "bodily injury by disease," the policy precluded coverage for a claim for "bodily injury by disease" "unless prior to [36] months after the end of the policy period written claim is made or suit is brought against the insured for damages." This 36-month limitation period, by its terms, applied only to claims for "bodily injury by disease." The policy language further provided that the policy applied only to injury by disease "caused or aggravated by exposure of which the

last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period." This last-day-of-last-exposure provision, by its terms, also applied only to claims for "injury *** by disease." Unlike coverage for "bodily injury by disease," coverage for "bodily injury by accident" was not subject to the last-day-of-last-exposure provision or the 36-month provision, exclusions upon which Arrowood and the circuit court relied to defeat coverage. Instead, "bodily injury by accident" is covered so long as it occurred during the policy period.

¶ 30    The policy language at issue provided coverage "only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure *** to conditions causing the disease." The plain language of the policy thus distinguished an accident as "occurring" and a disease as "caused or aggravated by exposure." The Krohn complaint alleged no accident "occurring" during the policy period. Instead, the Krohn complaint clearly alleged asbestos-related disease, conditions, and injury "caused or aggravated by exposure" to asbestos and would therefore be considered "bodily injury by disease" pursuant to the plain language of the policy. Moreover, the policy states that contraction of disease is not an accident within the meaning of the policy. Accordingly, Richard's contraction of mesothelioma and asbestos-related conditions and injuries may not be considered "bodily injury by accident" within the meaning of the policy.

¶ 31    Apex argues that the policy provisions reveal ambiguity as to the content and scope of what constituted "bodily injury by accident," and thus, the meaning of the words most favorable to the insured should be accepted, since the insurer prepared the

document. See *Canadian Radium & Uranium Corp.*, 441 Ill. at 334-35. In Section III, the policy language indicated that "bodily injury by disease" and "bodily injury by accident" were mutually exclusive; however, the policy then stated without further explication that "only such disease as results directly from a bodily injury by accident is included within the term 'bodily injury by accident.' " Considering this language in the context of the policy as a whole (*Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 330 (2008)), however, the language provides that a disease resulting from an accident occurring during the policy period, as opposed to exposure alone, may be considered a "bodily injury by accident" pursuant to the policy. In this case, however, the Krohn complaint did not allege an accident resulting from an occurrence. The Krohn complaint alleged asbestos-related disease, conditions, and unspecified injury resulting from extended exposure to asbestos. The allegations thus fall within the policy's "bodily injury by disease" limitations.

¶ 32   Our construction of the terms "disease" and "accident" with respect to employers' liability under Coverage B in the policy is further supported by their usage in the closely related context of workers' compensation claims. See *USX Corp. v. Liberty Mutual Insurance Co.*, 444 F.3d 192, 198 (3d Cir. 2006). Insurers write insurance for workers' compensation in combination with employers' liability claims to cover claims arising out of employee workplace injuries, in order to provide protection over " 'those situations where worker's compensation may not apply and thus avoid a gap in protection because employee claims subject to workers' compensation law are generally excluded in other types of liability policies.' " *Id.* at 199 (quoting 7B John Allan Applebaum, *Insurance*

*Law and Practice* § 4571, at 2 (Berdal ed. 1979)). Employers' liability insurance is written in conjunction with workers' compensation insurance especially where, as here, the workers' compensation/employers' liability policy contains a single "Definitions" section applicable to both "Coverage A—Workmen's Compensation" and "Coverage B—Employers' Liability." *Id.* We may therefore consider the substantial body of workers' compensation precedent to construe the terms "disease" and "accident" in a related employers' liability policy. *Id.* "[I]t is logical that the contracting parties would not use the term 'accident' in a [workers' compensation/employers' liability] policy intending the term to have one meaning under Coverage A and another under Coverage B, when the coverages are written in conjunction and are set forth in a single document with one set of definitions." *Id.*

¶ 33    As noted by Arrowood, workers' compensation and occupational disease laws deem an "accident" under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2012)) as traceable to a "definite time, place and cause." *Peoria Motors, Inc. v. Industrial Comm'n*, 92 Ill. 2d 260, 265 (1982); *Bunney v. Industrial Comm'n*, 75 Ill. 2d 413, 420 (1979); *Canadian Radium & Uranium Corp.*, 411 Ill. at 330 (an accident, to be within the Workmen's Compensation Act, must be traceable to a definite time, place, and cause). Arrowood argues that the alleged microscopic impact of asbestos fibers to Richard's body over the course of years of exposure cannot reasonably be considered a workplace "accident" traceable to a "definite time, place, and cause," but must be considered the "contraction of disease" that, by the express terms of the policy language, cannot be considered "bodily injury by accident."

19

¶ 34 We agree that the Krohn complaint, even when liberally construed, did not allege a palpable injury traceable to a definite time, place, and cause. Instead, the Krohn complaint alleged injury caused by extended exposure to asbestos. Pursuant to the plain language of the policy, an injury resulting from such exposure is considered a "bodily injury by disease." The only reasonable interpretation of the term "bodily injury by accident" excluded the underlying claims for asbestos-related disease and conditions.

¶ 35 Our conclusion is also consistent with that reached by other courts. See *USX Corp.*, 444 F.3d at 201 (asbestos-related injury not "bodily injury by accident" under policy language); *Riverwood Internship Corp. v. Employers Insurance of Wausau*, 420 F.3d 378, 384 (5th Cir. 2005) (asbestos-related illness constituted "bodily injury by disease" under the policy, and thus was subject to the 36-month exclusion provision); *Hubbs v. Anco Insulations, Inc.*, 747 So. 2d 804, 808 (La. Ct. App. 1999) (contraction of asbestosis was not "bodily injury by accident" within meaning of policy, and thus, 36-month exclusion applied). In these cases, the courts concluded that the terms at issue here were subject to only one reasonable interpretation—that an asbestos-related injury was not a "bodily injury by accident" under the policies. *Id.* The courts agreed that to find otherwise "would be to subsume the definition of bodily injury by disease into the definition of bodily injury by accident." *Hubbs*, 747 So. 2d at 807-08 ("to find that disease that results from accidental contact with a foreign body, such as an asbestos fiber, is bodily injury by accident would be to subsume the definition of bodily injury by disease into the definition of bodily injury by accident"); *Riverwood*, 420 F.3d at 383. Although we are not bound to follow decisions by federal courts other than the United

20

States Supreme Court, and we are not bound to follow decisions of reviewing courts of foreign jurisdictions (*Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231, 239 (1991)), we find their construction of identical terms in the standard employers' liability policies to be persuasive and to comport with our understanding of the plain meaning of the policy at issue here. See *USX Corp.*, 444 F.3d at 201.

¶ 36    We therefore hold that the circuit court properly concluded that the only reasonable interpretation of the policies led to the conclusion that the alleged asbestos-related disease and conditions did not constitute "bodily injury by accident" but were rather "bodily injury by disease." Accordingly, because the Krohn suit was filed more than 36 months after the applicable policies terminated, the 36-month exclusion of coverage provision applied, and the policy unambiguously excluded the possibility of coverage for the allegations in the Krohn action. Therefore, even considering the broad duty to defend standard set forth above, we find that the circuit court properly entered summary judgment in favor of Arrowood based on its exclusionary provisions with respect to "bodily injury by disease." Accordingly, we affirm the judgment of the circuit court of Madison County.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Madison County.


¶ 39    Affirmed.

21